EXHIBIT 2

DocuSign Envelope ID: E8348C9A-6C73-476E-9245-34E9A105349A

**Bitcoin Depot**

3343 Peachtree Rd NE Suite 750

Atlanta, GA, 30326

678-435-9604

Bitcoindepot.com

## INDEPENDENT CONTRACTOR AGREEMENT

THIS INDEPENDENT CONTRACTOR AGREEMENT ("Agreement") is made and entered into as of June 13, 2022 ("Effective Date") by and between Lux Vending, LLC DBA Bitcoin Depot, a Georgia Limited Liability Company (or the "Company") and The Cardamone Consulting Group, LLC ("Contractor"). The parties to the Agreement are sometimes referred to collectively as the "Parties" or simply as a "Party."

## RECITALS

WHEREAS, Contractor is in the business of providing certain goods and/or services as more fully set forth herein; AND

WHEREAS, Contractor wishes to provide those goods and/or services, in exchange for a certain fee, to Company.

THEREFORE, each Party, for due and valuable consideration, the receipt and adequacy of which is hereby acknowledged, agree as follows:

1. **Relationship of the Parties.** The only relationship between Contractor and Company created by this Agreement is that of independent contractors. No joint venture, employee-employer, or other such relationship of any kind is created by this Agreement. Contractor will not be considered an agent, employee, or other such representative of Company. Subject to the terms and conditions of this Agreement, Contractor shall control the time, means, and manner Contractor's performance hereunder. As an independent contractor, Contractor will receive appropriate tax documentation from the Company and Contractor must complete such documentation to be eligible for payment hereunder. Company is not required to collect, withhold or pay state, federal or local taxes on Contractor's behalf and Contractor and any Contractor Personnel (defined below) are not entitled to receive wages, perks, materials, or benefits Company may offer to any employees. Contractor is expressly and solely responsible for the expenses of itself and any Contractor Personnel (defined below) except as otherwise approved by Company in a written instrument signed by Company's CEO.

2. **Services.** The specified services to be performed by Contractor are described and set forth in Exhibit A's section "Services" ("Services") attached to this Agreement along with the amounts that Company agrees to pay Contractor in an amount and/or at a rate as set forth in Exhibit A's section "Fee" in exchange for the Services performed hereunder ("Fee") and any additional services as mutually agreed in a written instrument signed by authorized representatives of Company and Contractor.  During the Term, Contractor hereby agrees to perform all Services as defined by Exhibit A in a professional and

workmanlike manner.

3. **Intellectual Property.** The Parties agree that all intellectual property including, but not limited to, the results and proceeds of the Services, trademarks, copyrights, trade secrets, patents, and other such materials directly or indirectly comprising such intellectual property whether marked or unmarked, in draft or final form, or otherwise brought into existence during the term of this Agreement ("Intellectual Property"), of whatever type, relating to or arising from the Services performed under this Agreement, shall be and are hereby deemed the exclusive property of the Company. All Intellectual Property shall be deemed a Work Made for Hire (as defined in 17 U.S.C. 101) and shall be deemed the exclusive property of Company. Where such Intellectual Property is not a Work Made for Hire and for all other Intellectual Property created and/or developed hereunder, Contractor hereby irrevocably assigns and shall assign and/or transfer (as applicable) all right, title, ownership, license, and other such interest in such Intellectual Property to Company throughout the world for no additional fee, cost, royalty, or other amount or performance due by Company and Contractor shall fully cooperate with Company to effectuate the intent of this section and the transfer and assignment of the rights contemplated herein including, but not limited to, by the execution of documents to facilitate the transfer and/or assignment contemplated hereunder for the full, unlimited, and unrestricted exploitation of Intellectual Property by Company. Where Contractor's cooperation is impossible or impracticable, Contractor hereby irrevocably designates and appoints Company as agent and attorney-in-fact, to act for and on Contractor's behalf solely to execute and file any such application or other document and do all other lawfully permitted acts to further the prosecution and issuance of patents, copyrights, or other intellectual property protection. No transfer of any Intellectual Property or Confidential Information (defined below) of Company is contemplated nor shall be effectuated, directly or indirectly, by this Agreement and Company reserves all rights in its Intellectual Property, Confidential Information (defined below), and other owned and/or licensed materials and, further, no rights are granted in the same to Contractor. As between Contractor and Company, Company is, and will remain, the sole and exclusive owner of all right, title, and interest in and to any documents, specifications, data, know-how, methodologies, software, and other materials provided to Contractor by Company, except as strictly necessary to perform the Services during the Term (defined below) of the Agreement.

4. **Payment.** During the Term of this Agreement, Company agrees to pay the Fee in exchange for full performance of the Services in accordance with this Agreement. In order to receive the Fee, Contractor shall first invoice the Company on a monthly basis. Providing an invoice to Company is a condition precedent to payment being paid. Such invoice shall contain, at a minimum, Contractor's legal name, contact information, an itemized list of charges, the date the invoice was generated, and a description of the dates of service the invoice covers. Company reserves the right to dispute, in whole or in part, any invoice provided by Contractor and, should Company exercise its right to dispute an invoice, payment obligations for the amounts described in that invoice shall be deemed suspended until such dispute is resolved. Contractor must invoice Company within one hundred and eighty (180) days of the date upon which the Services are performed. If Contractor fails to invoice within the one hundred and eighty (180) day period, Contractor shall be deemed to have waived the right to collect such payments. Company shall pay undisputed, valid invoices within thirty (30) days after receipt.

5. **Termination.** This Agreement shall begin upon the Effective Date and shall continue until the earlier of: a) the completion of the Services or b) the termination of this Agreement as permitted herein ("Term"). Upon completion of the Services, this Agreement shall expire. This Agreement may be

terminated by either Party upon two (2) days' prior written notice to the other. This Agreement shall automatically terminate upon the death of Contractor.

6. **Assignment.**  Contractor may not assign, subcontract, or delegate any of its rights or obligations under this Agreement without the prior written consent of the Company. Each of the covenants, terms, provisions and agreements contained in this Agreement bind and benefit the parties and their respective successors and permitted assigns. Company may freely assign this Agreement.

7. **No Authority to Bind Company.**  Contractor acknowledges and agrees that Contractor and its employees, agents, contractors, and/or other such personnel of Contractor ("Contractor Personnel") have no authority to bind the Company or create obligations on the part of the Company without the prior written authorization of the Company. Contractor expressly represents and warrants that it and Contractor Personnel shall not hold themselves out as agents of or entities or individuals with the authority to bind Company.

8. **Non-Competition; Non-Solicitation**.

a) Definitions:

"Competitor" means any person or entity that provides virtual currency services (such as operating and/or managing kiosk whereby consumers can purchase virtual currency) of the type offered or provided by Company or other such goods and/or services offered by Company within two (2) years prior to the date of termination or expiration of this Agreement. The definition of "Competitor" specifically includes, but is not limited to, third-party virtual currency ATM services such as LibertyX, CoinCloud, CoinSource, Coinflip, RockitCoin, and BitStop.

"Restricted Territory" is defined as the state(s) in which the Contractor is performing the Services at the time of termination.

b) Covenant Not to Compete. During the Term of this Agreement and a period of one (1) year measured from the date of termination or expiration of this Agreement: Contractor shall not provide, facilitate, or otherwise make available to any Competitor any goods and/or services of the type provided to Company regardless of the Competitor's or Contractor's geographic location and, further, Contractor shall not provide, facilitate, cause to be provided,  or otherwise directly or indirectly and/or through the use of an intermediary, make available, within the Restricted Territory, goods and/or services that are substantially similar to the type of services offered or provided by the Company including, but not limited to, virtual currency kiosks and supporting logistical operations, without written authorization signed by the CEO of Company. Notwithstanding the foregoing, this covenant not to compete shall not be construed in a manner to prevent the Contractor from buying or selling virtual currency for personal use.

c) Non-Solicitation of Customers.  During the Term of the Agreement and for a period of two (2) years measured from the date of the termination or expiration of this Agreement, the Contractor shall not, directly or indirectly and/or through the use of any intermediary or on behalf of any third party, attempt to or actually solicit, contract with, employ, or otherwise interfere with or circumvent Company's relationship with

DocuSign Envelope ID: E8348C9A-6C73-47EF-9245-34F9A105349A

Company's customers or vendors or any business from any of Company's customers or vendors, including, but not limited to, actively seeking prospective customers with whom the Contractor had material contact for purposes of providing, promoting, or making available products or services that are competitive with those provided by the Company.

d) <u>Non-Recruitment of Employees.</u>  During the Term of this Agreement and for a period of two (2) years measured from the date of the termination or expiration of this Agreement, the Contractor shall not, directly or indirectly or through the use of any intermediary or on behalf of any third party, attempt to or actually solicit, contract with, employ, or otherwise interfere with or circumvent Company's relationship with  any person or persons employed by the Company or under contract with the Company including, but not limited to, independent contractors, vendors, or other such parties.

e)  <u>Time</u>.  In the event the enforceability of any of the terms of this Agreement shall be challenged in court and Contractor is not enjoined from breaching any of the restrictive covenants, then if a court of competent jurisdiction or arbitral body finds that the challenged restrictive covenant is enforceable, the time periods will be deemed tolled upon the filing of the lawsuit and/or arbitration challenging the enforceability of this Agreement until the dispute is finally resolved and all periods of appeal have expired.

f) <u>Irreparable Harm</u>.  Any violation of the restrictive covenants set forth in this Agreement would cause irreparable harm to Company and monetary damages would prove to be an inadequate remedy to the Company. Without limitation, the Company will be entitled to seek any and all remedies available to Company in equity including, but not limited to, injunctive relief. Contractor expressly consents to such remedy in the event of its breach, apparent breach, or threatened breach of a restrictive covenant contained herein and waives any defense related thereto. Further, Contractor shall not require Company to prove irreparable harm nor shall Contractor require that Company post a bond or other security, to the fullest extent permitted by applicable law.

9.  **Confidentiality and Non-Disclosure**.

a) <u>Definitions</u>

"Confidential Information" means any data, records, compositions, and information including, but not limited to, financial information, customer information, pricing information, scheduling, plans, methods, route data, personnel data, employee records,  means, formulae, strategies, kiosk content and mechanisms, cash schedules and amounts, Intellectual Property, , trade secrets as defined in O.C.G.A. § 10-1-761, and any other such information which a reasonable person of the industry would know to be or should know to be confidential directly or indirectly disclosed to the Contractor or of which the Contractor became aware of as a consequence of the Contractor's relationship with the Company whether marked or unmarked and whether in draft or final form. However, "Confidential Information" does not mean data or information (1) which has been voluntarily disclosed to the public by the Company or which is otherwise made available to the public through no fault, action, or omission of Contractor or Contractor Personnel or any third party acting on behalf of Contractor or Contractor Personnel or (2) which has been independently developed and disclosed by others.
.

DocuSign Envelope ID: E8348C9A-6C73-476F-9245-34F9A105349A

b) <u>Non-Disclosure.</u> All Confidential Information disclosed by Company to Contractor or otherwise obtained by Contractor, directly or indirectly, from Company must be kept in strict confidence, kept secret, and protected by Contractor and Contractor Personnel using the same degree of care to which Contractor protects its own Confidential Information but, in any event, no less than a reasonable degree of care taking into consideration the sensitivity of the Confidential Information. Contractor may not, except as otherwise set forth herein, use any Confidential Information for its own benefit or to assist any third party. Contractor shall use Company's Confidential Information only for purposes authorized by Company in writing and in strict performance of the Services. Contractor shall not disclose Company's Confidential Information to: (1) any other person employed by the Contractor unless disclosure is strictly necessary to perform the Services , (2) any contractor or agent of Contractor, unless disclosure is strictly necessary to perform the Services, or (3) to any third-party. Notwithstanding the foregoing, Contractor may disclose Confidential Information as required by a valid and binding court or government order, provided that Contractor provides prompt notice sufficient for Company to obtain a protective order on such Confidential Information, fully assists Company in obtaining such an order, and only discloses such Confidential Information as strictly and expressly required to comply with the court or government order. The Contractor shall not copy or reproduce Company's Confidential Information without Company's express permission or as such copies or reproductions are made as a course of electronic communication (i.e. email).

Any derivatives of Company's Confidential Information whether created by Company or Contractor, remains the sole property of the Company and shall be subject, without limitation, to the terms of the section Intellectual Property. The Contractor shall take all actions necessary to protect Company's Confidential Information against any unauthorized disclosure, publication or use. The Contractor shall immediately notify Company of any unauthorized disclosure, publication or use of Company's Confidential Information. Upon written request, Contractor shall return to Company all Confidential Information and copies thereof, including electronic copies, of Company's Confidential Information no later than twenty-four (24) hours after Company's written request.

The Contractor's obligations of confidentiality remain in effect for so long as the Company's Confidential Information remains confidential or a trade secret as defined by applicable law.

c) <u>Public Statements.</u> The Contractor is not permitted to disclose this Agreement, make any public statement regarding Company, or otherwise comment on the relationship between Company and Contractor via any means and methods including, but not limited to, the use of social media accounts, including but not limited to Facebook, LinkedIn, Instagram, and Twitter, advertising or discussing the Contractor's Services performed under this Agreement except as authorized in writing by Company (email being expressly sufficient).

d) <u>No Rights Granted</u>.  Nothing contained in this Agreement shall be construed as granting any rights under any patent, copyright, trademark, or other intellectual property right from Company to Contractor, nor shall this Agreement grant Contractor any rights in or to Company's Confidential Information other than the limited right to review such Confidential Information solely in connection with the Agreement except as otherwise expressly set forth herein.

10. **Georgia Law Governs.** This Agreement and any dispute arising from or related to this Agreement or

the surrounding circumstances shall be governed by, interpreted, and enforced in accordance with the laws of the State of Georgia without regard to principles of choice of law or conflict of laws and including any statutes of limitations thereof. Each Party to this Agreement submits exclusively to binding arbitration as set forth in this Agreement. In no event shall either Party be entitled to a trial by jury and each Party expressly waives their right thereto.

11. **Severability.** The provisions hereof are severable and in the event that any provision of this Agreement shall be determined to be invalid or unenforceable in any respect by a court of competent jurisdiction or arbitral body, the remaining provisions hereof shall not be affected, but shall, subject to the discretion of the court, remain in full force and effect, and any invalid or unenforceable provision shall be deemed, without further action on the part of the Parties hereto, amended and limited to the extent necessary to render the same valid and enforceable.

12. **Waiver of Breach.** No course of dealing or omission or delay on the part of either Party hereto in asserting or exercising any right hereunder shall constitute or operate as a waiver of any such right. No waiver of any provision hereof shall be effective, unless in writing and signed by or on behalf of the Party to be charged therewith. No waiver shall be deemed a continuing waiver or waiver in respect of any other or subsequent breach or default, unless expressly so stated in writing.

13. **Notice.** Any notice required or permitted to be given pursuant to this Agreement shall be deemed to have been sufficiently given either when served personally, sent and delivered via first-class mail with return receipt requested, or sent and delivered via electronic mail. Notices to the Company or Contractor shall be effective only when addressed to and actually delivered to the applicable Party at the address(es) set forth below, or to such other address as each Party may, from time to time, designate in a writing delivered to the notice address(es) below.

TO COMPANY:
ATTN: Bitcoin Depot
3343 Peachtree Rd NE Suite 750
Atlanta, GA, 30326

With an electronic copy to:
ATTN: Legal Department
legal@bitcoindepot.com

TO CONTRACTOR:
ADDRESS: 11197 SW 71st Ct., Ocala, FL 34476
PHONE: (954) 740-9579
EMAIL: nicholas@cardamoneconsulting.com

14. **Representations and Warranties.** Contractor expressly represents, agrees, and warrants:

a) it and its performance hereunder shall comply with applicable law, rule, regulation and other binding legal authority;

b) everything provided or facilitated hereunder and its performance shall not violate or otherwise

infringe upon the rights, intellectual property, ownership, title, license or other such interest of any third party;

c) it is able to enter into and perform under this Agreement without violating any duty and/or obligation it owes to a third party and/or any restrictive covenant that it may be subject to;

d) Company may expressly rely upon any information, documents, or records provided by Contractor and that such information, documents, and records shall be complete and accurate;

e) it possesses and shall maintain for the duration of this Agreement any and all licenses, registrations, and/or other filings necessary to maintain good standing with any and all jurisdictions in which it operates and to perform hereunder;

f) it can provide the rights (such as the rights in Intellectual Property) contemplated hereunder and anything provided hereunder shall be original works of authorship or otherwise fully owned by Contractor;

g) it does not have any outstanding encumbrances, liens, restraining orders, or other restrictions which would prevent performance hereunder; and

h) the individual signing on behalf of Contractor is authorized to bind Contractor to this Agreement

15. **Mandatory Binding Arbitration; Audit.** Any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules and judgement on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. The arbitration shall be conducted by one (1) arbitrator mutually agreed upon by the Parties. The Parties agree that this arbitration shall be final, binding, and confidential. This arbitration shall be conducted in Atlanta, Georgia at a location selected by Company. Judgment on the arbitrator's award may be entered in any court of competent jurisdiction. Company may request, and Contractor shall provide, any and all books, records, data, and/or information generated under or relating to this Agreement including, but not limited to, notes created by Contractor, communications with any third party or parties, records demonstrating hours worked by Contractor, and internal analytics generated by Contractor within three (3) business days of Company's written request in a manner prescribed by Company or, if stored electronically, in the manner normally kept by Contractor.

16. **Mutual Drafters; Waiver.** Each Party has had an opportunity to or actually have an attorney of their choosing review the terms and conditions of this Agreement and cooperated in the drafting and preparation of this Agreement. Hence, this Agreement shall not be construed against any Party on the basis that the Party was or was not the drafter. No breach by Contractor shall be deemed waived by Company unless Company affirmatively and specifically waives that breach in writing. Waiver of one breach shall not be deemed a waiver of future breach(es).

17. **Entire Agreement; Remedies.** This Agreement embodies the entire agreement of the Parties hereto with respect to the subject matter hereof and supersedes all prior agreements, terms, negotiations, commitments or arrangements relating thereto whether oral or written. This Agreement may only be

modified, appended, or otherwise amended with a written instrument duly executed by an authorize representative of Company and Contractor and such written instrument must state its intention to modify, append, or otherwise amend this Agreement. Remedies available to Company under this Agreement shall be cumulative and election of one remedy shall not preclude any other remedy in whole or in part.

18. **Headings; Survival.** Headings are used only for ease of reference and shall not convey any legal right, duty, obligation or other term nor shall they affect the interpretation of this Agreement. Each provision, the survival of which is necessary to give effect to that provision's intent, shall survive termination of this Agreement including, but not limited to, obligations of indemnity and defense, restrictive covenants (as described herein), and obligations of confidentiality.

19. **Indemnity**. Contractor shall indemnify, defend, and hold Company harmless against any and all losses, costs, fees (including reasonable attorneys' fees), damages, judgements, expenses, settlements, and other such amounts incurred or otherwise alleged against Company as a result of enforcement of any provision of this Agreement and any third party claim arising from or relating to Contractor's: a) breach of this Agreement including, but not limited to, any representations and warranties contained herein, b) violation of applicable law, rule, regulation, or other binding legal authority, c) infringement upon or violation of any third party right, title, intellectual property, license, ownership, or other such interest, and d) willful misconduct or negligence.

20. **Disclaimer**. COMPANY EXPRESSLY DISCLAIMS ANY AND ALL REPRESENTATIONS AND WARRANTIES INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, QUANTITY, QUALITY, PROFITABILITY, AND ALL OTHER SUCH WARRANTIES AND CONTRACTOR EXPRESLY AGREES THAT CONTRACTOR HAS NOT RELIED UPON ANY REPRESENTATIONS AND/OR WARRANTIES. COMPANY EXPRESSLY DISCLAIMS ANY LIABILITY FOR SPECIAL DAMAGES OF ANY KIND INCLUDING, BUT NOT LIMITED TO, ANY CONSEQUENTIAL, PUNITIVE, LOST PROFITS, OR OTHER SUCH DAMAGES REGARDLESS OF WHETHER OR NOT COMPANY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR SHOULD HAVE BEEN AWARE OF SUCH DAMAGES.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement intending to be bound be the terms and conditions set forth herein.

On behalf of,
Lux Vending, LLC d/b/a Bitcoin Depot

Signed   C. Scott Buchanan
         024FCBB5F18748B...

Name:  Scott Buchanan
Title:   Chief Financial Officer

Contractor: Nicholas Cardamone

Signed:   _____
          EFD5AA5B4ADD407...

Name:  Nicholas Cardamone

Address:  11197 SW 71st Ct. Ocala,FL, 34476

**Exhibit A**

**Services**

**Services:**
- Contractor will provide Google Ads consulting services to Company on a monthly basis.
- These consulting services will include, but are not limited to:
  - Execution of Google Ads campaigns and test campaigns
  - Providing actionable recommendations to Company
  - Monitoring and reporting Google Ads metrics
- Contractor will participate in a weekly update meeting with Company's Director of Marketing (to be scheduled according to the mutual agreement of Company and Contractor)
- Contractor will create, update, and distribute monthly report/dashboard to Company containing, at minimum, the current marketing metrics for Company's Google Ads campaigns

**Fee:**  For the months of June, July, and August of 2022, Contractor will be paid the amount of $8,000 per month for an estimated 40 to 60 hours per month subject to this Agreement. Beginning in September 1, 2022, Company will have the right to renegotiate the monthly payments and hours required from the Contractor whereby Company and Contractor shall meet via teleconference and agree to such new Fees. Where Company and Contractor cannot or do not agree to new Fees, this Agreement shall terminate. Should this Agreement be terminated, a prorated refund for services paid for but not performed shall be issued to Bitcoin Depot.