UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BYTE FEDERAL, INC.,
     Plaintiff,

vs.                                   No. 8:23-cv-102

LUX VENDING LLC d/b/a
BITCOIN DEPOT,
     Defendant.
_____/


**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE NON-PARTY MOTION
TO QUASH PLAINTIFF'S SUBPOENA FOR REQUEST FOR PRODUCTION**

Byte Federal, Inc. ("Plaintiff"), pursuant to Local Rule 3.01(g), Rule 37 and 45 of the Federal Rules of Civil Procedure, the Court's Inherent Authority, and 28 U.S.C. § 1927, hereby files its Response in Opposition to the Motion to Quash Plaintiff's Subpoena for Request for Production (the "Motion") submitted by The Cardamone Consulting Group, LLC ("Cardamone").  In support, Plaintiff states as follows:

## I.   **Preliminary Statement.**

After being served with the underlying Subpoena for Production of Documents [31-1] (the "Subpoena"), Cardamone's counsel requested an extension of time to produce the responsive documents; given the Court-ordered mediation on June 20, 2023, Plaintiff stipulated to an extension of time through June 16, 2023 (*i.e.*, the Friday before the mediation), in exchange for Cardamone's stipulation to produce the responsive documents by that extended deadline (the "Stipulation"). Cardamone's counsel agreed to this Stipulation – both by phone and in writing – and advised the undersigned that Cardamone "will get to work on compiling responsive documents."

As evident by the filing of its Motion, Cardamone and its counsel violated the Stipulation, and refused to produce any responsive documents by the agreed-upon deadline. As a result, Plaintiff was deprived of information that may have very well impacted the June 20, 2023 mediation, which ultimately resulted in an impasse.

The following memorandum of law will demonstrate that the Motion should be swiftly denied, both on procedural and substantive grounds. As to the former, Cardamone and its counsel violated an express Stipulation, and should not be awarded for such bad faith conduct.  Furthermore, Cardamone and its counsel breached their

1

Local Rule 3.01(g) obligations, as they never conducted a meet-and-confer prior to filing the Motion.  These procedural violations alone are sufficient to deny the Motion.

Even assuming that those procedural violations are set aside – which they should not be – Cardamone's Motion should also be denied on substantive grounds. "Litigations are fought and won with information,"[1] and the instant Motion marks a concerted effort to block critical information from being produced in the underlying lawsuit.  Lux Vending LLC d/b/a Bitcoin Depot ("Defendant") has admitted in sworn interrogatory answers that Cardamone is a key witness in this lawsuit, as Cardamone was involved in the unlawful infringement that forms the basis of the Complaint. Instead of letting the evidence come to light through the truth-seeking process, Cardamone has engaged in a bad faith tactic to hide and conceal. On the merits, the Motion should be denied because it consists of conclusory arguments and bald assertions unsupported by any facts or evidence, which are required to sustain Cardamone's "heavy burden" in seeking to quash the Subpoena.  Additionally, and while the Motion fails to substantiate any purported "trade secret" or "confidentiality" concerns in refusing to comply with the Subpoena, there is a Stipulated Protective Order ("SPO") in the case which has been fully executed by Plaintiff and Defendant.

As a result, the Motion should be denied in all respects, and Cardamone should fully comply with the Subpoena by producing all responsive documents.  Finally, this

---

[1] *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1327 (Fed. Cir. 2011).

Court should award the Plaintiff all available relief, including attorneys' fees and costs pursuant to Rule 37, 45, the Court's inherent authority, and 28 U.S.C. § 1927.

## II.   Procedural History Leading Up to the Motion.

1.      On January 13, 2023, Plaintiff filed the instant lawsuit sounding in federal trademark infringement and unfair competition, arising out of Defendant's intentional and willful infringement of the Plaintiff's "ByteFederal" trademark (the "Plaintiff's Mark"), which took place – as the Plaintiff subsequently learned – over a ***years-long intentional advertising campaign***.

2.      As shown immediately below, Defendant (in cooperation and with the assistance of its advertising agents, such as Cardamone), engaged in a deceptive and false advertising campaign, such that if a consumer searched for the Plaintiff (*i.e.*, searching "byte federal" on GOOGLE.com), the ***Defendant's advertisement*** would appear as the first result. What is more, Defendant (and apparently Cardamone) intentionally used and inserted Plaintiff's Mark in the sponsored advertisement, luring and inducing consumers to click on the ***Defendant's website***, under the false pretense that the consumer had found "Byte Federal – the Most Trusted Bitcoin ATMs:"



3.      In response to Plaintiff's discovery requests, Defendant admitted under oath that the above-referenced infringement campaign "ran from April 2019 – October 2019; July 2020 – April 2021; and November 2022 – January 2023." Moreover, in response to Plaintiff's Interrogatory #5, Defendant admitted that Cardamone is a key witness who assisted in the infringement campaign:

> 5.      With respect to the "sponsored advertisement" shown immediately above, identify all individuals involved in the conception, selection, and/or adoption, and the date of such conception/selection/adoption. For each such individual, please state his/her title and the role he/she played in connection with such conception/selection/adoption.
>
> ANSWER: Defendant objects to Interrogatory No. 5 on the grounds of compound question. The following individuals/companies were involved in the actions that allowed the above-referenced Google advertisement to populate.
>
> - AIS Media – Outside advertising consultant.
> - Huddled Masses – Outside advertising consultant.
> - Cardamome Marketing Group/ Nick Cardamome – Outside advertising consultant.
>
> The above consultants provided all keywords for both advertising campaigns that lead to the population of the above-referenced Google advertisement. The above consultants received the competitor list from the defendant.

4.      In light of the Defendant's verified response, Plaintiff sought clearly relevant and targeted documents through the subject Subpoena [Dkt. 31-1], which was served on Cardamone on May 26, 2023, with a compliance deadline of June 8, 2023. *See Declaration of Jonathan Woodard* ("Woodard Dec.") at ¶3-4, which is attached hereto as **Composite Exhibit A**.

5.      On Tuesday, June 6, 2023, the undersigned received a telephone call from Robert Batsel, Esq., who stated that he represented Cardamone, and in light of the June 8, 2023 deadline, Mr. Batsel requested additional time to gather and produce the responsive documents to the Subpoena.  *Id.* at ¶5.

6.      Due to court-ordered mediation scheduled for June 20, 2023, the undersigned advised that the Plaintiff wanted to be cooperative and to provide an

extension of time, but on the condition that Cardamone was reciprocally cooperative and would agree to produce the responsive documents by Friday, June 16, 2023. That way, the Plaintiff would have time to review and analyze the responsive documents prior to the court-ordered mediation on the following Tuesday (*i.e.* June 20). *Id*. at ¶6.

7.     Cardamone's counsel agreed and entered into the Stipulation, whereby Plaintiff would extend the compliance deadline from June 8 to June 16, 2023, in exchange for Cardamone producing responsive documents on June 16, 2023. *Id*. at ¶7. In accordance with that Stipulation, Cardamone (through Mr. Batsel, its counsel) advised that it would "get to work compiling responsive documents." *Id*.

8.     To facilitate that production, Plaintiff's counsel advised during the call that a Sharefile link would be provided, such that Mr. Batsel could easily "drag and drop" the responsive documents into a secure link. The undersigned also advised that to the extent Mr. Batsel believed that any responsive documents should be designated as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY," a Stipulated Protective Order had been executed in the case, and therefore Mr. Batsel would be entitled to make good-faith designations on documents (as applicable). *Id*. at ¶8.

9.     As an additional good faith measure, the undersigned even stated to Mr. Batsel that he could focus on specific document requests in the Subpoena in terms of getting those produced by the stipulated and extended June 16, 2023 deadline. Stated differently, of the eighteen (18) document requests in the Subpoena, the undersigned offered to "stage" the production, such that at a minimum, specific and targeted document requests would be produced during a "first batch production" either before

or on the extended deadline; subsequently, the remaining document requests could be produced later pursuant to a "second batch production." That way, Plaintiff could at least receive some key documents in advance of the June 20 mediation. *Id*. at ¶9.

10.    During the call between counsel for Plaintiff and Cardamone, and consistent with the parties' Stipulation, at no point in time did Cardamone's counsel ever state that Cardamone would even serve objections, and much less file a motion to quash. *Id*. at ¶10. In fact, at no point in time did Cardamone's counsel suggest or even imply that Cardamone would file a motion to quash. *Id*. at ¶11.

11.    Later that day, at 4:03 p.m., Plaintiff sent Cardamone's counsel an email, confirming the parties' Stipulation, and providing the referenced Sharefile link (to facilitate production of the documents). *Id*. at ¶12. Plaintiff also sent Cardamone's counsel a copy of the Stipulated Protective Order, such that any confidential documents could be designated accordingly. *Id*. at ¶12-13. If Cardamone had ever expressly stated (or implied) that a motion to quash would be filed, Plaintiff would not have sent the Sharefile link, or the SPO (as there would have been no reason to do so until such a motion to quash had been adjudicated). *Id*. at ¶14.

12.    The following day, on June 7, 2023 at 8:46 a.m., Cardamone's counsel confirmed the parties' Stipulation, and even advised that he "will get to work compiling responsive documents and making any necessary designations pursuant to the Protective Order." *Id*. at ¶15.

13.    Running completely contrary to his duty of candor as an officer of the Court, and in express violation of the Stipulation, Cardamone's counsel filed the

subject Motion on June 12, 2023. *Id.* at ¶17.[2]

14.     That same day, and after receiving notice of the Motion, Plaintiff's counsel contacted Mr. Batsel in writing in a good faith attempt to resolve the matter without Court intervention. *Id.* at ¶17. Plaintiff requested that Cardamone withdraw the Motion by June 13, 2013, failing which Plaintiff would bring this matter to the attention of the Court, and would seek "all available and appropriate relief, including but not limited to the imposition of sanctions and attorneys' fees." *Id.* at ¶17.

15.     The Motion remains pending, and Cardamone has failed to produce a *single* document in response to the Subpoena. *Id.* at ¶19-20. It is also significant that Cardamone never conducted a meet-and-confer prior to filing its Motion. *Id.* at ¶20.

16.     As noted above, Plaintiff attended the June 20, 2023 mediation, but Plaintiff and Defendant reached an impasse.

## III.   <u>Memorandum of Law</u>.

### A.   <u>The Motion is Procedurally Deficient Because Cardamone Failed to Meet-and-Confer in Violation of Local Rule 3.01(g).</u>

As a threshold issue, the Motion should be denied as procedurally improper, as counsel for Cardamone failed to meet and confer in violation of Local Rule 3.01(g).[3]

---

[2] Cardamone's original motion to quash [Dkt. 25] referenced various exhibits, but failed to attach any to the motion.  Accordingly, the Court permitted Cardamone leave to re-file its Motion, this time with the exhibits included. [Dkt. 30].  Cardamone then re-filed its Motion on June 22, 2023. [Dkt. 31].

[3] *See Narcoossee v. Kohl's Dep't Stores*, 2014 U.S. Dist. LEXIS 120376, at *8-9 (M.D. Fla. Aug. 28, 2014) (finding that "Local Rule 3.01(g) imposes a duty on counsel to meet and confer in good faith before a motion to quash and for a protective order is filed"); *Diez v. Am. Landmark*, 2022 U.S. Dist. LEXIS 200465, at *2-3 (S.D. Fla. Sep. 13, 2022) (denying motion to quash as "facially deficient for failure to properly certify conferral with the parties or non-parties who may be affected by the relief sought prior to bringing the Motion," and finding that compliance with the local rules "is not a mere technicality.").

It is undisputed that Cardamone never met-and-conferred with Plaintiff's counsel prior to Cardamone filing the Motion.[4]  Accordingly, for this reason alone, this Court has good cause to deny the Motion. Nevertheless, if the Court is inclined to move past Cardamone's procedural violation, the Motion should still be denied on the merits.

**B. <u>Legal Standard Applicable to the Motion to Quash</u>.**

"In a motion to quash a subpoena, the burden of persuasion rests with the movant.  ***A party seeking to quash a subpoena bears a heavy burden of proof***." *Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n*, 2007 U.S. Dist. LEXIS 113062, at *9 (S.D. Fla. Mar. 30, 2007) (emphasis added).  The "moving party 'must meet the heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive.'" *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 2009 U.S. Dist. LEXIS 127024, at *9 (M.D. Fla. Jan. 9, 2009) (internal citation omitted).

**C. <u>The Motion Should be Denied Because the Plaintiff and Cardamone Entered into An Express, Written Stipulation Whereby Plaintiff Extended the Compliance Deadline to Produce Responsive Documents in Exchange for Cardamone's Agreement to Produce Responsive Documents</u>.**

As demonstrated above, Cardamone (through counsel) agreed, and entered into the Stipulation, whereby Plaintiff would extend the compliance deadline to respond and produce documents from June 8 to June 16, 2023, in exchange for Cardamone producing responsive documents on June 16, 2023.   In accordance with that Stipulation, Cardamone (through counsel, Mr. Batsel) advised in writing that it would

---

[4] This failure was actually consistent, however, with the parties' Stipulation, as Cardamone expressly agreed to produce all responsive documents on June 16, 2023 (but ultimately failed to do so).

"get to work compiling responsive documents." Notwithstanding the parties' agreement, Cardamone violated the subject Stipulation and proceeded to file its Motion, which seeks to quash the Plaintiff's Subpoena. Accordingly, this Court should enforce the parties' Stipulation, deny the Motion, and compel Cardamone to do what it already agreed to do: produce all documents responsive to the Subpoena.

### D. To the Extent That the Court Chooses *Not* to Enforce the Parties' Stipulation, Then Cardamone's Motion Should Be Denied as "Untimely."

As demonstrated immediately above, if Plaintiff's Stipulation for an extension of time is honored and enforced, then Cardamone's reciprocal Stipulation to produce all responsive documents should similarly be enforced; in that event, the Motion should be denied. However, if the Court declines to enforce the Stipulation, then Cardamone's Motion is "untimely," and should be denied. In other words, if Cardamone's Stipulation to produce all responsive documents on June 16 is (for some reason) deemed null, void, or otherwise invalid, then logically, Plaintiff's Stipulation to extend the compliance deadline of June 8 must be deemed similarly and reciprocally null, void, or otherwise invalid; in that event, Cardamone's June 12 Motion – filed *after* the Subpoena's June 8 compliance deadline – is "untimely."

The text of Fed. R. Civ. P. 45 expressly provides that a party's request to quash or modify a subpoena must be made upon a "*timely* motion." *Ocasio v. Nationstar*, 2017 U.S. Dist. LEXIS 181010, at *3-4 (M.D. Fla. Nov. 1, 2017) (*citing* Fed. R. Civ. P. 45(d)(3)(A)) (emphasis added). Although "[w]hat constitutes timeliness" under Rule 45(d)(3)(A) "is not stated in the Rule," courts have concluded that "a motion to quash

is generally considered timely if it is brought *before* the time indicated for compliance." *Id*. (internal citation omitted) (emphasis in original).[5]

For example, in *Ocasio*, the "Defendant served Plaintiff with the Notice of Intent to Serve Non-Party Subpoenas Duces Tecum Without Deposition and copies of the subpoenas on August 25, 2017." *Ocasio*, 2017 U.S. Dist. LEXIS 181010, at *5-6 (M.D. Fla. Nov. 1, 2017). "[H]owever, Plaintiff did not file the instant Motion [to quash] until September 22." *Id*. In denying the underlying motion to quash, the court held that "[b]ecause the time indicated for compliance on all of the subpoenas had passed before Plaintiff filed her Motion [to quash], the Court cannot consider Plaintiff's Motion timely filed." *Id*.[6] Turning to this case, the Subpoena required a June 8, 2023 compliance date. Therefore, to the extent that the parties' Stipulation is not enforced, then Cardamone was required to file its Motion on or before June 8, but did not do so until June 12. Therefore, the Motion is untimely and should be denied, and all of Cardamone's purported objections should either be overruled or otherwise deemed waived. *See La. Generating. v. Ill. Union*, 2011 U.S. Dist. LEXIS 143679, at *6

---

[5]  *See also Flagstar Bank, FSB v. Freestar Bank*, 2009 U.S. Dist. LEXIS 76842, at *9 (N.D. Ill. Aug. 25, 2009) ("courts have held that a motion to quash must be made at or before the time of compliance."); *Odyssey v. Nagby*, 2018 U.S. Dist. LEXIS 53520, at *8 (S.D. Cal. Mar. 29, 2018) ("Motions to quash under Rule 45(d)(3)(A)(iii) are required to be filed in a 'timely' fashion, which courts have read to mean before the compliance date designated in the subpoena.").

[6]  *Dexter v. Cosan*, 2000 U.S. Dist. LEXIS 22134 (D.N.J. Oct. 24, 2000) (denying motion to quash two days after the date of compliance for the production of documents); *City of St. Petersburg v. Total Containment*, 2008 U.S. Dist. LEXIS 36735, at *6 (E.D. Pa. May 1, 2008) (denying motion to quash as untimely, where the motion was filed one day after the compliance date).

(M.D. La. Dec. 14, 2011) (the "failure to serve timely objections to a Rule 45 subpoena generally results in a waiver of all grounds for objection, including privilege.").[7]

**E. The Motion Should Also Be Denied on the Merits.**

1. The Motion Advances Only Vague, Conclusory, and Unsupported "Burdensomeness" Objections, Which Deserve No Consideration and Fail to Carry Cardamone's "Heavy Burden" in Attempting to Quash the Subpoena.

On the merits, the Motion should be denied because Cardamone failed to carry its burden in showing that the Subpoena should be quashed based upon burdensomeness. *See St John v. Keller Williams*, 2019 U.S. Dist. LEXIS 224130, at *4 (M.D. Fla. Nov. 19, 2019) ("The movant bears the burden of demonstrating that the subpoena subjects the movant to undue burden."). Here, the Motion advances only bare-bones assertions that are wholly lacking to sustain an "unduly burdensome" objection.[8] Cardamone was required (but failed) to submit a declaration or any other evidence in support of the notion that Plaintiff's Subpoena is somehow unduly burdensome.[9]

---

[7] As repeated throughout this memorandum, to the extent Cardamone's Motion is deemed timely based on the Stipulation (*i.e.,* Plaintiff's Stipulation to extend the compliance deadline), then the Motion should *still* be denied in accordance with that same Stipulation (*i.e.,* Cardamone's Stipulation to produce all responsive documents on or before June 16, 2023).

[8] *See Diez v. Am. Landmark*, 2022 U.S. Dist. LEXIS 200465, at *4 (S.D. Fla. Sep. 13, 2022) (finding that the non-party's "objections are factually too general and conclusory for the Court to reasonably adjudicate its Motion to Quash," and the "[m]ovant's barebones assertions of hardship lacking specificity or evidentiary support are grounds for denial.").

[9] *See Breland v. Levada*, 2015 U.S. Dist. LEXIS 192553, at *14 (S.D. Ala. May 1, 2015) ("The manner in which the moving party goes about establishing that compliance with the subpoena would be unduly burdensome is through submission of 'affidavits or other proof to support this assertion.'") (citation omitted); *Andra v. JDA Software*, 312 F.R.D. 444 at *5 (N.D. Tex. Apr. 13, 2015) ("The moving party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."); *NE Techs., v. Evolving Sys.*, 2008 U.S. Dist. LEXIS 85351, at *13 (D.N.J. Sep. 12, 2008) ("courts have characterized boilerplate objections, without an accompanying affidavit, to lack the specificity

In sum, the Motion does not include an accompanying affidavit detailing how the requests in the Subpoena are somehow unduly burdensome, nor does the Motion detail the volume of documents being withheld, the time and expense to analyze and produce relevant documents, or otherwise.  There is simply no basis for this Court to find that producing documents will be unduly burdensome, time consuming, or costly, and therefore the Motion should be denied.  *See Breland, LLC*, 2015 U.S. Dist. LEXIS 192553, at *14-15 (S.D. Ala. May 1, 2015) (finding that the movant has "not submitted any affidavits and, as a consequence, this Court has no basis to find that producing the documents requested…will be particularly time consuming or costly").

2. <u>Cardamone's Purported "Confidentiality" Concerns are Vague and Baseless</u>.

Cardamone's other "ground" for refusing to comply with a lawfully issued Subpoena is a bares-bones assertion that compliance with the Subpoena will require Cardamone to disclose unidentified "trade secrets" or "confidential information." However, in order "[t]o prevail on the motion to quash, [a non-party] bears the burden to show that: (1) the information sought is a trade secret, and (2) disclosure of the information might be harmful."  *Gordian Med., Inc. v. Vaughn*, 2023 U.S. Dist. LEXIS 65275, at *4 (D. Del. Apr. 13, 2023).

a. *The Motion Failed to Show That the Information is a Trade Secret or "Confidential."*

---

required, thus constituting a waiver of such objections."); *W. Penn*, 2013 U.S. Dist. LEXIS 197070, at *17 (W.D. Pa. Feb. 15, 2013) ("[m]erely asserting that a party will suffer an undue burden without 'specific estimates of staff hours needed to comply' will be 'categorically rejected.'").

The movant seeking to quash a subpoena carries a heavy burden in demonstrating that the information sought constitutes a "trade secret" or "confidential" information.[10]  The Motion omits any discussion or specificity in this regard, and there is no absolute privilege for confidential information or trade secrets under federal or Florida law.  Merely claiming, *ipse dixit*, that a "trade secret" exists, does not satisfy Cardamone's burden.[11]

The Motion is equally deficient because Cardamone does not specify which documents sought are purportedly "confidential," or why this Court is somehow bound by an alleged non-disclosure agreement between Cardamone and the Defendant. The opinion from *Waldemar* is instructive, as a non-party moved to quash a subpoena on the grounds that the requested "documents are shielded from production by a confidentiality agreement." *Waldemar E. Albers v. Mid-American Energy*, 2008 U.S. Dist. LEXIS 77619, at *1 (M.D. Ga. Oct. 3, 2008).  In denying the motion to quash, the court found that the movant "has not produced the confidentiality agreement, he has not demonstrated that the subpoenaed documents are protected by the agreement, and has not demonstrated why the agreement is binding on this Court.

---

[10] *See Barger v. First Data*, 2018 U.S. Dist. LEXIS 211430, at *23 (N.D. Ala. Dec. 14, 2018) ("The burden to establish that the information sought is a trade secret and the harm of its disclosure rests on the party seeking to avoid discovery."); *Cmedia, Ltd. v. LifeKey Healthcare*, 216 F.R.D. 387, 390-91 (N.D. Tex. 2003) ("The moving party has the burden to establish that the information sought is a trade secret and that its disclosure might be harmful.").

[11] *See Gordian Med. v. Vaughn*, 2023 U.S. Dist. LEXIS 65275, at *5 (D. Del. Apr. 13, 2023) ("conclusory allegations, which are not supported by a declaration or any supporting documents, do not satisfy [a non-party's] burden to show that the information sought is a trade secret or that disclosure of the secret might be harmful."); *Barger v. First Data*, 2018 U.S. Dist. LEXIS 211430, at *24 (N.D. Ala. Dec. 14, 2018) ("A mere conclusory statement that information sought *may* contain a trade secret…is insufficient.") (emphasis in original).

As a result, Movant has not demonstrated that the confidentiality agreement prevents production of the closing documents." *Id*. at *3.

The opinion from *FieldTurf United States, Inc.*, 2012 U.S. Dist. LEXIS 32610 (W.D. Tex. Mar. 12, 2012) is also directly on point. In that case, non-party Hellas Construction, Inc. ("Hellas") moved to quash a subpoena on the basis that the plaintiff was "attempting to discover protected trade secrets." *Id*. The court noted "that there is no absolute privilege for confidential information or trade secrets under federal law," and that the "subpoenaed party bears the burden of showing that the information is a trade secret and that disclosure would be harmful." *Id*. Applying those principles, the court found that "Hellas has completely failed to meet its burden to show that [plaintiff's] subpoena seeks information that is protected by trade secrets and that the disclosure would be harmful to Hellas. Hellas' complete statement of their argument in this regard is as follows: 'As is apparent from the subpoena, the categories requested are extremely broad, have marginal, if any, relevance to the issues in the pending lawsuit, and seek information which is confidential and/or trade secret information that should not be provided to the Plaintiffs. Specifically, each of the requests . . . seek information which is proprietary and confidential to Hellas' business.'" *Id*. at 7 (ellipses in original). In denying Hellas' motion to quash, the court held that these bald statements were "plainly conclusory and vague assertions. Such conclusory allegations are not sufficient to meet the burden under Rule 45," and furthermore, "Hellas has failed to provide the Court with any evidence or supporting affidavits showing that the information sought contains trade secrets." *Id*. at *7.

14

Applying *Waldemar* and *FieldTurf* to the instant case, Cardamone has failed to come forward with any evidence or supporting affidavits demonstrating that the information sought by the Subpoena contains purported trade secrets or confidential information.  For that reason as well, the Motion should be denied.

b.   *The Motion Did Not Show That Disclosure Would Be Harmful.*

Although Cardamone was required to demonstrate that disclosure of the information sought would be harmful, the Motion omits any discussion in this regard, as it fails to demonstrate *who* would be harmed, or *how* any harm would ensue by disclosure.  *See Cash Today of Texas v. Greenberg*, 2002 U.S. Dist. LEXIS 20694, at *3 (D. Del. Oct. 23, 2002) ("It is not the court's role to fathom arguments on [the movant's] behalf, however, and 'blanket and generalized' assertions of confidentiality, absent allegations regarding specific harm, are not sufficient to sustain a motion to quash."); *Barger v. First Data Corp.*, 2018 U.S. Dist. LEXIS 211430, at *24 (N.D. Ala. Dec. 14, 2018) ("A mere conclusory statement that information sought…*could* be harmful is insufficient.") (emphasis in original).

c.   *The SPO Adequately Addresses and Safeguards Any Concerns of Confidentiality.*

The Motion should also be denied because any purported concerns regarding confidentiality are adequately addressed and safeguarded by the SPO executed by both parties in the instant case.  Put simply, Cardamone cannot engage in a blanketed refusal to comply with a lawfully issued subpoena; to be sure, the reality is that "[c]onfidential

information is produced in lawsuits all the time" pursuant to safeguards in a protective order. *Akins v.* S. *Cent. Bell Tel. Co.,* 744 F.2d 1133, 1136 (5th Cir. 1984).

Even so, and after breaking its Stipulation to produce responsive documents, the Motion baselessly contends that Cardamone "was advised by Plaintiff's counsel of the existence of a Confidentiality Agreement and/or Stipulated Protective Order signed by the parties in this litigation. However, Non-Party is not bound by such agreement and has not been otherwise released from its confidentiality and non-disclosure obligations arising under its Agreement with the Defendant." [Dkt. 31, p. 5].

Such a proposition is both illogical and frivolous. Cardamone is most certainly "bound by" a lawfully issued federal subpoena, which Cardamone is intentionally refusing to comply with. Furthermore, Plaintiff *invited* Cardamone to produce documents and to make appropriate "CONFIDENTIAL" and/or "ATTORNEYS EYES ONLY" designations (to the extent Cardamone had a good faith basis to do so); Cardamone accepted that invitation, and pursuant to the parties' Stipulation, agreed that it would "get to work compiling responsive documents and making any necessary designations pursuant to the Protective Order." *See Woodard Dec*. at ¶15.

Regardless, Plaintiff cites to *Fieldturf*, where the court found that "[e]ven if Hellas had demonstrated that the subpoena required the disclosure of trade secrets, it has failed to do demonstrate that it would be harmed by having to produce the information to FieldTurf. ***There is a Confidentiality Order already in place in the underlying litigation, and it applies to information provided by third parties***. The Court

finds that, to the extent the subpoena requires the production of trade secrets, the Confidentiality Order adequately protects any confidentiality interest Hellas has in its information." *FieldTurf United States, Inc.*, 2012 U.S. Dist. LEXIS 32610 at *8 (W.D. Tex. Mar. 12, 2012) (emphasis added). In the same way here, the SPO is effective and in place in the underlying litigation, applies to information provided by third parties (such as Cardamone), and adequately protects any confidentiality interest in the underlying information to be produced. In summary, where a protective order exists to ensure that confidential information is maintained in an appropriate manner, an objection as to the "confidential nature of documents" is not a proper basis to refuse disclosure.[12] On the merits, the Motion should be denied in all respects.[13]

**F. The Motion Should Be Denied, and All Appropriate Sanctions (Including an Award of Attorneys' Fees) Should be Imposed Based Upon Cardamone's Misrepresentation and Breach of its Stipulation, as Cardamone Has Needlessly and Vexatiously Multiplied These Proceedings in Bad Faith.**

---

[12] *See Cut-Heal Animal v. Agri-Sales Assocs.*, 2009 U.S. Dist. LEXIS 62981, at *4 (W.D. Tex. July 14, 2009) (noting that "[w]hile the records likely do contain information in which Mr. McCready has a legitimate expectation of privacy, this is not a reason to prohibit their discovery if they are relevant to pending litigation. Rather, the solution for this problem is the entry of a protective order limiting the parties by whom the documents may be viewed, and to whom they may be distributed. Agri-Sales represents that there is already such an order in place in this case," and therefore "the confidential nature of the banking records is not a proper reason to prevent their disclosure, as Mr. McCready can take advantage of the protections contained within that order.").

[13] The Motion only cites to one substantive decision, but Cardamone's reliance on *Narcoossee*, 2014 U.S. Dist. LEXIS 120376 (M.D. Fla. Aug. 28, 2014) is misplaced. In that case, the court granted a non-party's motion to quash *because no party filed a response in opposition*, and therefore the motion was uncontested or otherwise deemed conceded. *Id.* Additionally, the motion to quash was granted since the underlying subpoena was procedurally "defective because it violates Federal Rule of Civil Procedure 45(a)(2), which provides that subpoenas 'must issue from the court where the action is pending.' Because the Kohl's subpoena was issued from the wrong court, it is not enforceable." *Id.* at *3. For at least those reasons, *Narcoossee* is unavailing.

Pursuant to Rule 37 and 45, 28 U.S.C. § 1927, and the Court's inherent authority, all appropriate sanctions and attorneys' fees should be awarded. "The provisions of the Rule 37 fee-shift apply to disputes arising under Rule 45." *Rodriguez v. AmericanWest Bank*, 2017 U.S. Dist. LEXIS 225729, at *6 (C.D. Cal. Apr. 20, 2017); *see also Ceramic Corp. v. Inka Mar.*, 163 F.R.D. 584, 589 (C.D. Cal. 1995) ("if a motion to quash is opposed and the moving party loses, the opposing party may seek attorney's fees and expenses unless the court is convinced that the losing party was 'substantially justified' or 'other circumstances' exist making such an award 'unjust.'"); *O'Neal v. Capital One*, 2011 U.S. Dist. LEXIS 72248, at *10 (N.D.W. Va. July 6, 2011) (noting that although "Rule 45 does not explicitly subject failed motions to quash a subpoena duces tecum to Rule 37 penalties...district courts have imposed reasonable expenses upon moving parties losing their motion to quash.").

Additionally, sanctions can and should be imposed under 28 U.S.C. § 1927, as well as the Court's inherent authority, based upon Cardamone's counsel's unreasonable, vexatious, and bad faith conduct. "[A]n attorney multiplies proceedings unreasonably and vexatiously within the meaning of the statute only when the attorney's conduct is so egregious that it is tantamount to bad faith." *Amlong & Amlong, v. Denny's*, 500 F.3d 1230, 1239 (11th Cir. 2007) (internal citations omitted). Bad faith is found "where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Schwartz v. Millon Air*, 341 F.3d 1220, 1225 (11th Cir. 2003). Finally, "neither 28 U.S.C. § 1927 nor Federal Rule of Civil Procedure 11 limits a court's inherent

authority to sanction bad-faith conduct when the party's conduct is not within the reach of the rule or the statute…[and] when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO*, 501 U.S. 32, 42-46 (1991).

In this case, Cardamone's counsel is an officer of the court, and when a stipulation is made between the parties – particularly one that will conserve the parties' and Court's time and resources – that Stipulation should be honored and enforced. By breaking the Stipulation, Cardamone and its counsel have engaged in unreasonable, vexatious, and bad faith litigation that has unreasonably multiplied these proceedings. *See Robertson v. Cartinhour*, 711 F. Supp. 2d 136, 138 (D.D.C. 2010) (awarding attorneys' fees surrounding a motion to quash, and finding "that the decision of Robertson's counsel to move to quash documents he and his client had agreed to produce during an earlier hearing was reckless and in bad faith.").[14]

---

[14] Even the lone case cited by Cardamone supports a fee award.  In that case, the movant's attorney attempted to resolve the dispute with the defendant's attorney, who unreasonably refused to withdraw the subpoena. *Narcoossee*, 2014 U.S. Dist. LEXIS 120376, at *8-9 (M.D. Fla. Aug. 28, 2014).  The court found that "Local Rule 3.01(g) imposes a duty on counsel to meet and confer in good faith before a motion to quash and for a protective order is filed," and "that after counsel conferred the subpoena should have been withdrawn. Instead, Kohl's objected to the relief Ross is seeking, and then chose not to file a response to Ross' objection and motion. These actions lead the Court to conclude that Kohl's has not acted in good faith. Kohl's position is not substantially justified, and no other circumstances make an award of fees and expenses unjust. Accordingly, pursuant to Rules 26(c)(3), 37(a)(5), and 45(d)(1) of the Federal Rules of Civil Procedure, the Court finds that Ross is entitled to recover its reasonable attorney's fees and costs…" *Id.*  Similarly here, Plaintiff and Cardamone entered into a Stipulation which, if Cardamone had honored, would have obviated the need for this Court's intervention.  Leading that aside, Cardamone ***never*** met and conferred prior to filing the Motion, and even after Plaintiff contacted Cardamone in a good faith effort to resolve the dispute – and to have Cardamone honor its Stipulation and withdraw the Motion – Cardamone refused.  Such actions should easily lead the Court to conclude that Cardamone has not acted in good faith, that its position is not substantially justified, and that no other circumstances make an award of fees unjust.

WHEREFORE, the Court should an enter order: **(1)** denying the Motion; **(2)** compelling Cardamone to produce all responsive documents within three days of the issuing order; **(3)** imposing sanctions and awarding attorneys' fees pursuant to Rule 37 and 45, 28 U.S.C. § 1927, and Court's inherent authority; and **(4)** entering such other and further relief as the Court deems just and proper.

Dated:  June 26, 2023

/s/ Jonathan Woodard
John Cyril Malloy, III
Florida Bar No. 964,220
jcmalloy@malloylaw.com
Oliver Alan Ruiz, Lead Counsel
Florida Bar No. 524,786
oruiz@malloylaw.com
Jonathan Woodard
Florida Bar No. 096,553
jwoodard@malloylaw.com
**MALLOY & MALLOY, P.L.**
2800 S.W. 3rd Avenue
Miami, FL 33129
T: (305) 858-8000

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was served on June 26, 2023 via the CM/ECF electronic procedures, and to the counsel appearing on behalf of the Defendant in the above-referenced lawsuit.  Additionally, on this day, the foregoing and all exhibits hereto were served on Robert Batsel, counsel for Cardamone.

/s/ Jonathan Woodard