## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## Case No. 2023-cv-00102

BYTE FEDERAL, INC.,

     Plaintiff,

     vs.

LUX VENDING LLC d/b/a BITCOIN DEPOT,
HUDDLED MASSES, INC., and
THE CARDAMONE CONSULTING GROUP, LLC.

     Defendants.

_____/

## AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL[1]

Plaintiff, Byte Federal, Inc. ("Plaintiff" or "Byte Federal"), by and through its undersigned counsel, hereby files its Amended Complaint against Lux Vending, LLC d/b/a Bitcoin Depot ("Bitcoin Depot"), Huddled Masses, Inc. ("Huddled Masses"), and The Cardamone Consulting Group, LLC ("CC").  Bitcoin Depot, Huddled Masses, and CC may hereinafter be referred to collectively as "Defendants."  In support, Plaintiff alleges as follows:

### INTRODUCTION

1.    This lawsuit arises from the Defendants' unauthorized use and willful infringement of the federally registered "BYTEFEDERAL" trademark that serves as

---

[1] This Amended Complaint is being filed pursuant to written consent as provided for under Fed. R. Civ. P. 15(a)(2).

1

a source identifier for Plaintiff and its related products and services to consumers.

2.    Defendants have unfairly competed and intentionally used the Plaintiff's "BYTEFEDERAL" trademark without authorization or permission; those unlawful actions have damaged the Plaintiff's business, misappropriated the Plaintiff's customers, and eroded the Plaintiff's market share.

3.    This conspiracy involved a months-long campaign of using the Plaintiff's "BYTEFEDERAL" trademark in advertisements, including in a prominent manner in the title of online advertisements.

4.    For example, consumers often run "natural" or "organic" searches on Google.com, which populate (using formulas and algorithms) a list of hyperlinks to webpages that consumers reasonably believe are relevant to the imputed search terms. Here, however, and upon information and belief, Defendants Huddled Masses and CC conspired with and received monies from Bitcoin Depot in connection with the unlawful use of Plaintiff's trademark, which ultimately caused paid advertisements and/or sponsored links to be displayed above the consumers' "natural" or "organic" search results; those paid advertisements used the Plaintiff's "BYTEFEDERAL" trademark in the ad text, including in a prominent way in the title of the ad.

5.    These paid advertisements and/or sponsored links included the Plaintiff's trademark, as well as deceptive language that lured and otherwise misled consumers, such that when a consumer searched for the Plaintiff, the infringing

advertisements displayed "front and center" and in plain text (*i.e.*, not solely in embedded metadata), and the consumer was instead misdirected to Bitcoin Depot's website (which markets, advertises, offers for sale, and sells directly competing goods and services).

6.      This unlawful conduct resulted in intentional consumer confusion, including actual confusion and the misdirection of consumers who were otherwise searching for the Plaintiff, but were instead "re-directed" to Bitcoin Depot.

7.      Plaintiff seeks a permanent injunction to forever put a stop to such unlawful conduct and infringement, as well as all other damages and available relief provided for by law.

## THE PARTIES

8.      Plaintiff is Florida corporation with a principal place of business at 795 Commerce Drive, Venice, Florida 34292.

9.      Bitcoin Depot is a Georgia limited liability company with a principal place of business at 3343 Peachtree Rd., Suite 750, NE Atlanta Georgia 30326. Defendant is registered to conduct business in the State of Florida and uses the infringing mark in connection with services that are offered within the Middle District of Florida.

10.     Defendant Huddled Masses is a corporation with a principal place of business at 1177 West Loop South, Suite 1310, Houston Texas 77027.

11.     Defendant CC is a Florida limited liability company with a principal place of business at 11197 71st Court, Ocala Florida 34476.

## JURISDICTION

12.     This is an action for injunctive and other relief under the Federal Trademark Act, 15 U.S.C. §1051, et seq. ("Lanham Act"), particularly 15 U.S.C. § 1125(a), for trademark infringement, false advertising, false designation of origin, and related unfair competition.  Plaintiff also asserts claims in accordance with its common law rights pursuant to Fla. Stat. §495.161, for Florida common law trademark infringement and unfair competition, and for civil conspiracy.

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1338(a) and 1338(b). This Court also has jurisdiction pursuant to the doctrine of supplemental jurisdiction, as set forth in 28 U.S.C. §1367.

14.     Personal jurisdiction is proper over Bitcoin Depot because it is a foreign limited liability company registered in the State of Florida.

15.     Personal jurisdiction is also proper over Bitcoin Depot because it has committed tortious acts within this State, and the Middle District of Florida, including the infringement set forth herein, within the meaning of Fla. Stat. §48.193(1)(a). This includes causing injury to the property of Plaintiff within this state, and the Middle District of Florida, namely Plaintiff's Mark as set forth herein, arising out of acts or omissions by the Bitcoin Depot while, at or about the time of the injury, Bitcoin Depot

was engaged in solicitation or service activities within this State, and the Middle District of Florida, within the meaning of Fla. Stat. §48.193.

16.     Personal jurisdiction is also proper because, as shown below, Bitcoin Depot: (a) operates, conducts, engages in, or carries on a business or business venture in this State, and the Middle District of Florida, within the meaning of Fla. Stat. §48.193(1)(a); and (b) is engaged in substantial and not isolated activity within this State, and the Middle District of Florida, within the meaning of Fla. Stat. §48.193(2):



17.     Personal jurisdiction is proper over Huddled Masses because it has committed tortious acts within this State, and the Middle District of Florida, including the infringement set forth herein, within the meaning of Fla. Stat. §48.193(1)(a). This includes causing injury to the property of Plaintiff within this state, and the Middle District of Florida, namely Plaintiff's Mark as set forth herein, arising out of acts or omissions by Huddled Masses.

18.     Personal jurisdiction is also proper over Huddled Masses because it: (a) operates, conducts, engages in, or carries on a business or business venture in this

State, and the Middle District of Florida, within the meaning of Fla. Stat. §48.193(1)(a); and (b) is engaged in substantial and not isolated activity within this State, and the Middle District of Florida, within the meaning of Fla. Stat. §48.193. For example, Huddled Masses publicly displays how it "drove visitation at the Naples Zoo" located in Florida (and within the Middle District of Florida), and that the Naples Zoo "has renewed their contract for 2023."[2]

19.     Personal jurisdiction is proper over CC because it is a limited liability company registered to do business in the State of Florida.

20.     Personal jurisdiction is proper over CC because it has committed tortious acts within this State, and the Middle District of Florida, including the infringement set forth herein, within the meaning of Fla. Stat. §48.193(1)(a). This includes causing injury to the property of Plaintiff within this state, and the Middle District of Florida, namely Plaintiff's Mark as set forth herein, arising out of acts or omissions by CC.

21.     Personal jurisdiction is also proper over CC because it: (a) operates, conducts, engages in, or carries on a business or business venture in this State, and the Middle District of Florida, within the meaning of Fla. Stat. §48.193(1)(a); and (b) is engaged in substantial and not isolated activity within this State, and the Middle District of Florida, within the meaning of Fla. Stat. §48.193.

---

[2]https://static1.squarespace.com/static/607de940832cbd7ad0fee381/t/644b0a0950 5abb10c138bd30/1682639370118/Huddled+Masses+Naples+Zoo+Case+Study.pdf

22.     Personal jurisdiction is also proper over Defendants Huddled Masses and CC because those parties each engaged in a civil conspiracy with Bitcoin Depot (as alleged more fully herein), and Bitcoin Depot is already subject to the personal jurisdiction of this Court.

## VENUE

23.     Venue is proper under 28 U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise to the claim occurred in the Middle District of Florida, including the acts of infringement complained of herein against Defendants.

24.     Venue is proper under 28 U.S.C. §1391(b) in that a substantial part of the events giving rise to the causes of action asserted herein occurred in this district because consumers are likely to be confused by the Defendants' conspiracy and unlawful conduct, which occurred and caused harm to the Plaintiff in the Middle District of Florida.

25.      Venue is also proper under 28 U.S.C. §1391(b) because Defendants market, advertise, and offer their goods and services in the Middle District of Florida, and otherwise do business in the Middle District of Florida.

26.     Venue is proper under 28 U.S.C. §1391(b) in that all Defendants are subject to the Court's personal jurisdiction in the Middle District of Florida, as set forth above.

<u>**GENERAL ALLEGATIONS**</u>

27.     Byte Federal is one of the largest Bitcoin ATM networks in the United States and its self-service crypto kiosks provide easy access to buying and selling Bitcoin. This action is brought to address the willful infringement campaign waged by the Defendant Lux Vending LLC, a competitor, which has made unauthorized and unlawful use of Plaintiff's "BYTEFEDERAL" trademark in commerce, in violation of Plaintiff's rights under federal and state laws.

28.     In addition to the operation of ATM vending machines, Byte Federal provides training, support, and software development for the Bitcoin ecosystem.

29.     Plaintiff is a FinCEN registered money services business.

30.     Since at least 2016, Plaintiff has used its "BYTEFEDERAL" trademark in interstate commerce in connection with the following goods and services:

| International Class No. 09 | Interactive computer kiosks comprising hardware, peripherals, and recorded software, for use in trading, storing, sending, receiving, accepting and managing cryptocurrency, fiat currency, and other digital assets; Downloadable software applications for the processing of transactions involving cryptocurrency, fiat currency and other digital assets; automated teller machine (ATM); Interactive computer kiosk systems comprised primarily of computers, computer hardware, computer peripherals, and computer touchscreens for use in the purchase and sale of cryptocurrency, fiat currency, and other digital assets; Computer kiosk systems comprised primarily of computers, computer hardware, recorded software, computer peripherals, and computer touchscreens for use in enabling customers to view and purchase cryptocurrencies, fiat currencies and other digital assets in retail stores; Downloadable computer software for use in trading, storing, sending, receiving, accepting and managing cryptocurrency, fiat currency, and other |

| | |
|---|---|
| | digital assets |
| International Class No. 36 | financial services, namely, electronic funds transfer via electronic communications networks, providing financial services for the processing of transactions involving cryptocurrency, fiat currency and other digital assets. |
| International Class No. 42 | use of online non-downloadable software to electronically trade, store, send, receive, accept and transmit cryptocurrency, fiat currency and other digital asset transactions; Software as a service featuring software for management and distribution of cryptocurrency, fiat currency and other digital assets; Software-as-a-service featuring software for database management in the fields of finance and blockchain technology; installation and maintenance of computer software programs in the field of blockchain and financial technology; Platform-as-a-service featuring computer software to allow users to perform electronically trade, store, send, receive, accept and transmit cryptocurrency, fiat currency and other digital asset transactions; Providing online, non-downloadable computer software for use in trading, storing, sending, receiving, accepting and managing cryptocurrency, fiat currency, and other digital assets; Providing online, non-downloadable software applications for the processing of transactions involving cryptocurrency, fiat currency and other digital assets. |

31.     Plaintiff is the owner of the federally registered "BYTEFEDERAL" mark (U.S. Registration No. 6,971,368), along with all common law rights in the mark and variations thereof (hereinafter referred to as "Plaintiff's Mark").

32.     Plaintiff conducts substantial business online, and places high value on consumers visiting its website (www.bytefederal.com).  Plaintiff's website provides important information about its products and services, and allows consumers to, for example, "find a ByteFederal Bitcoin ATM location" near

the consumer's location.

33.     Plaintiff is the owner of its distinctive "BYTEFEDERAL" mark, and as detailed above, has been continuously using this mark in commerce since at least 2016.

34.     With over one thousand "BYTEFEDERAL" Bitcoin ATM machines located across the continental United States, Plaintiff provides a secure, efficient, and excellent quality product and related service, including instant verification, an increased daily limit conversion, and easy-to-access kiosks.

35.     Plaintiff's use of its "BYTEFEDERAL" mark in commerce pre-dates any date of first use that any of the Defendants can rely upon, and Plaintiff continues to advertise, market, offer for sale, and sell a wide variety of goods and services under Plaintiff's Mark.

36.     Since long prior to the acts of Defendants complained of herein, Plaintiff has expended money, time, and effort in advertising, promoting, marketing, and selling the services and products bearing the Plaintiff's Mark.

37.     The Plaintiff's Mark has developed valuable goodwill among the consuming public through, *inter alia*, advertising efforts and expenditures, media coverage, and significant revenues. As a result of Plaintiff's extensive and continuous use, the Plaintiff's Mark is extremely strong and has garnered widespread recognition with the consuming public.

38.     In fact, and no doubt recognizing Plaintiff as having one of the largest

Bitcoin ATM networks, Plaintiff was recently featured in INC.COM as one of the Southeast's fastest-growing companies.

39.     The Plaintiff's Mark is prominently displayed on and in connection with Plaintiff's website and Instagram page (among other channels), where Plaintiff has amassed nearly 100,000 followers.

40.     Plaintiff's Mark is used in connection with advertising its goods, and services, and has, by actual usage, served to identify the Plaintiff as the source of the goods and services.

41.     Long prior to any date upon which Defendants can rely, the Plaintiff adopted the Plaintiff's Mark, and that mark since its adoption has been continuously used in interstate commerce in connection with its goods and services, including its ATM machines and kiosks.

42.     Long prior to the acts of Defendants complained of herein, the Plaintiff's Mark has acquired secondary meaning and significance in the minds of the purchasing public, as a result of Plaintiff's goodwill and strong reputation, and long-term use and recognition of Plaintiff's Mark as a source identifier for the Plaintiff's goods and services.

43.     The Plaintiff's Mark indicates the origin of Plaintiff's goods and services and is relied upon and recognized by consumers and members of the trade, as a symbol of and assurance as to the quality, security, and efficiency of the Plaintiff's goods and

11

services.

*Unlawful Activities of Bitcoin Depot, Huddled Masses, and CC*

44.     Bitcoin Depot is also a FinCEN registered money services business that directly competes with Plaintiff in the space of Bitcoin ATM machines.

45.     Huddled Masses promotes itself as a "digital performance marketing company that brings advertisers and agencies comprehensive solutions that combine visibility, access and insights to drive results."

46.     Huddled Masses also promotes itself as a company that can "turn your marketing dollars from an expense to an investment with a measurable return."

47.     Huddled Masses provides online advertising services, including algorithmic optimization, marketing and media services, revenue optimization, digital marketing, and lead generation.

48.     CC promotes itself as a "revenue growth" advertising agency that has generated over $810 million in new net revenue for its clients.

49.     On its website (https://www.cardamoneconsulting.com/), CC claims to have engaged in marketing and advertising services for several companies, including those located in Florida (*e.g.* Boatsetter).

50.     Long subsequent to Plaintiff's adoption and use of Plaintiff's Mark in commerce, Bitcoin Depot, Huddled Masses, and CC began adopting and using in commerce the exact same mark, BYTE FEDERAL (the "Infringing BYTE

FEDERAL Mark"), a mark that is confusingly similar to Plaintiff's Mark, such that consumers are likely to confuse the two.

51.  Long subsequent to Plaintiff's adoption and use of Plaintiff's Mark in commerce, and with the full assistance and cooperation of Huddled Masses and CC, Bitcoin Depot advertised, offered for sale, and sold identical, competing, or related goods and services under an infringing "BYTE FEDERAL" trademark, and/or used and otherwise misappropriated the Plaintiff's Mark to, among other things, cause confusion and divert customers away from the Plaintiff, and instead to Bitcoin Depot.

52.  As detailed below, Bitcoin Depot has advertised and used the Infringing BYTE FEDERAL Mark in connection with ATM machines, kiosks, and related financial services transactions, as well as other unauthorized and related goods and services, all designated with the Infringing BYTE FEDERAL Mark.

53.  Despite knowing full well of Plaintiff and Plaintiff's Mark, Bitcoin Depot, Huddled Masses, and CC have willfully committed acts of infringement by, among things, directly targeting consumers using the Plaintiff's Mark in online advertising. For example, when a consumer searches for the Plaintiff by typing in "byte federal," *Bitcoin Depot* is featured as the first search result in a sponsored ad wherein Bitcoin Depot makes unauthorized and unlawful use of the Plaintiff's Mark in the text of the ad in a prominent manner, i.e., "**Byte Federal** – The Most Trusted Bitcoin ATMs":



54.    This unlawful conduct and willful infringement campaign was intentionally executed in an effort to misappropriate Plaintiff's goodwill, customers, and market share, and also to lure potential consumers away from the Plaintiff.

55.    Upon information and belief, the underlying infringement campaign began as early as April 2019, and ran through January 2023.  During this campaign, Bitcoin Depot conspired with Defendants Huddled Masses and CC in connection with using the Plaintiff's Mark through the subject false advertisement.

56.    Upon information and belief, at the direction, assistance, and on behalf of Bitcoin Depot, Huddled Masses and CC took overt acts and executed the civil

14

conspiracy such that Plaintiff's Mark appeared in sponsored links and advertisements, including in the title of the ad.

57.    The result of this conspiracy is shown in the example below.   This screenshot demonstrates that when consumers searched for the Plaintiff, a sponsored link and advertisement appeared at the very top of the consumers' "search results," such that consumers were deceived and otherwise misled into believing that they were proceeding with information about the Plaintiff's products and services (including transacting business with the Plaintiff and, for example, finding a Bitcoin ATM location nearest to the consumers' location); however, the sponsored link instead re-directed those consumers to Bitcoin Depot's website, which resulted in consumer confusion, lost business, lost revenue, and other financial damage to the Plaintiff:



58.     During discovery in the instant lawsuit, Bitcoin Depot admitted under oath that the unlawful infringement campaign "ran from April 2019 – October 2019; July 2020 – April 2021; and November 2022 – January 2023," and that both Huddled Masses and CC were key players and intimately involved with that campaign:

> 6.     With respect to the "sponsored advertisement" shown below, specify all periods of time in which You ran/promoted/displayed all advertisements featuring any iteration of BYTE FEDERAL and/or BYTEFEDERAL, including: (a) when the advertisements first appeared; and (b) when the advertisements were taken down or otherwise removed (if applicable).
>
> **ANSWER: Subject to, and without waiving, any objections, the advertisements ran from April 2019 – October 2019; July 2020 – April 2021; and November 2022 – January 2023.**

16

> 5.    With respect to the "sponsored advertisement" shown immediately above, identify all individuals involved in the conception, selection, and/or adoption, and the date of such conception/selection/adoption. For each such individual, please state his/her title and the role he/she played in connection with such conception/selection/adoption.
>
> **ANSWER: Defendant objects to Interrogatory No. 5 on the grounds of compound question. The following individuals/companies were involved in the actions that allowed the above-referenced Google advertisement to populate.**
>
> - AIS Media – Outside advertising consultant.
> - **Huddled Masses** – Outside advertising consultant.
> - **Cardamome Marketing Group/ Nick Cardamome** – Outside advertising consultant.
>
> **The above consultants provided all keywords for both advertising campaigns that lead to the population of the above-referenced Google advertisement. The above consultants received the competitor list from the defendant.**

59.     As shown in the screenshot captured above, which was the byproduct of the conspiracy and coordinated campaign between Bitcoin Depot, Huddled Masses, and CC, the sponsored advertisement and link is inherently confusing and deceptive because it does not inform consumers who "sponsored" the advertisement; if anything, consumers were misled into believing that it was the *Plaintiff* who "sponsored" the advertisement so that it would be shown at the very top of the consumers' search results (when in fact it was Bitcoin Depot, Huddled Masses, and CC who deceptively executed the unlawful campaign so that such an advertisement would appear).

60.     As shown in the example above, which was the byproduct of the conspiracy and coordinated campaign between Bitcoin Depot, Huddled Masses, and

CC, the sponsored advertisement and link is inherently confusing and deceptive because it preyed on consumers' trust and confidence that they would be transacting business with "Byte Federal - **The Most Trusted Bitcoin ATM**" provider; this deceptive advertisement enticed consumers to click on the advertisement, which Bitcoin Depot, Huddled Masses, and CC intentionally designed to redirect to Bitcoin Depot's website.

61.    Discovery in this lawsuit has revealed that actual confusion has occurred, and that a substantial number of consumers were misled and in fact "clicked" on the false advertisement, which landed them directly on Bitcoin Depot's website (and presented with Bitcoin Depot's competing products and services, including where consumers could find the nearest Bitcoin Depot ATM location).

62.    Bitcoin Depot and Huddled Masses knew that this infringement campaign was unlawful.  For example:

(a)    An in-depth analysis and report was prepared by Huddled Masses in 2021 as to its advertising/marketing protocols and execution in assisting Bitcoin Depot in this unlawful campaign.  This report included strategy and discussed the Plaintiff.

(b)    Bitcoin Depot and Huddled Masses knew and exchanged documentation showing that both companies were aware (i) of Google's Trademark Rules; and (ii) that the use of another's

trademark in ad text is unlawful or otherwise illegal.

    (c)    In April of 2021, and after Plaintiff notified Bitcoin Depot of its engaging in the unlawful acts alleged herein, Bitcoin Depot then communicated with Huddled Masses regarding their current campaign of targeting the Plaintiff and Plaintiff's Mark. Bitcoin Depot and Huddled Masses also communicated regarding a "take down" of the subject advertisement due to Plaintiff's "take down" demands.

63.    Bitcoin Depot and CC knew that this infringement campaign was unlawful. For example:

    (a) Even though Bitcoin Depot received a cease-and-desist demand from Plaintiff back in 2021, Bitcoin Depot also engaged CC to execute the same infringement campaign of targeting Plaintiff, resulting in the use of Plaintiff's Mark in infringing advertisements as part of Bitcoin Depot's and CC's competitor campaigns.

    (b) After being sued by the Plaintiff in January of 2023, Bitcoin Depot exchanged communications with CC pertaining to their conspiracy and "take down" instructions pertaining to the unlawful infringing advertisements addressed herein, and their strategy in connection with targeting Plaintiff and Plaintiff's Mark).

64.     Bitcoin Depot's, Huddled Masses', and CC's willful infringement and unauthorized use of the Plaintiff's Mark has caused damage to the Plaintiff's business, and harm to the Plaintiff's brand and name recognition.

65.     Bitcoin Depot's, Huddled Masses', and CC's willful infringement and unauthorized use of the Plaintiff's Mark has allowed Bitcoin Depot to generate increased web traffic to Bitcoin Depot's website, and to profit off of the goodwill and reputation associated with Plaintiff and Plaintiff's Mark.

66.     Bitcoin Depot's, Huddled Masses', and CC's willful infringement and unauthorized use of the Plaintiff's Mark falsely represents or suggests to consumers that they originated from Plaintiff (when they did not); that there is a connection between Plaintiff and Bitcoin Depot (when there is not), that Bitcoin Depot has acquired the Plaintiff (when it has not), or that Bitcoin Depot has obtained the rights to use the Plaintiff's Mark as a result of a license (when it has not).  All of the foregoing unlawful practices have caused consumer confusion, and have violated or eroded the Plaintiff's exclusive right to use the Plaintiff's Mark.

67.     Such use is likely to cause confusion, to cause mistake, and to deceive customers and prospective customers as to the origin or sponsorship of Bitcoin Depot's goods and services and to cause them to falsely believe that said goods and services are the goods and services of Plaintiff, or are sponsored, licensed, associated, authorized, or approved by Plaintiff, all to the detriment of Plaintiff, the trade, and the

public.

68.     In addition to the immediate confusion and damage to the Plaintiff stemming from Bitcoin Depot's, Huddled Masses', and CC's willful infringement and unauthorized use of the Plaintiff's Mark, further damage is caused *even if* consumers ultimately realize (which rarely, if ever, occurs) that the sponsored advertisement, link, and Bitcoin Depot's website are not affiliated with the Plaintiff; by that time, consumers are likely to stay on Bitcoin Depot's website or to search for the nearest Bitcoin Depot ATM location (if, for example, they are performing the search on a smartphone) , and abandon their search for the Plaintiff's products and services.

69.     Bitcoin Depot's, Huddled Masses', and CC's unlawful use of the Infringing BYTE FEDERAL Mark has continued in interstate commerce in the United States, including in the Middle District of Florida, in connection with ATM machines, kiosks, and other goods and services that are sold to the consuming public.

70.     Consumer confusion is likely to occur because the parties' advertising methods are either the same or highly similar, as Bitcoin Depot also promotes its goods and services bearing the Infringing BYTE FEDERAL Mark online.

71.     The Infringing BYTE FEDERAL Mark is confusingly similar to Plaintiff's Mark because, among other things: (a) the Plaintiff's Mark is a strong, distinctive trademark; (b) the Infringing BYTE FEDERAL Mark is identical to Plaintiff's Mark, and the marks create the same overall impression, including with

respect to the sound, appearance, and manner in which they are used; (c) Plaintiff's and Bitcoin Depot's goods and services are similar and highly related, including because they are of a kind that the public attributes to a single source; (d) Plaintiff's and Bitcoin Depot's sales channels, distribution, and customer bases are the same or highly similar; (e) Plaintiff's and Bitcoin Depot's advertising methods or channels are the same or highly similar, including because the parties use the same forums and media to advertise, leading to possible confusion; and (f) Bitcoin Depot, Huddled Masses, and CC intended to infringe on the Plaintiff's Mark, as Bitcoin Depot, Huddled Masses, and CC were well aware of the Plaintiff, have intentionally ignored the potential for infringement, and finally because Bitcoin Depot wholly ignored the Plaintiff's cease-and-desist demands. Additional bases demonstrating a likelihood of confusion between the parties' marks are expected to be revealed through discovery.

72.     Bitcoin Depot, Huddled Masses, and CC have utilized and continue to utilize the Infringing BYTE FEDERAL Mark in interstate commerce without Plaintiff's permission, consent, or authorization.

73.     The acts of Bitcoin Depot, Huddled Masses, and CC have been willful, by virtue of at least: (a) their knowledge of the Plaintiff's rights in and to the Plaintiff's Marks; (b) the fact that there is and never could be any lawful use or purpose in using the *Plaintiff's Mark* to redirect consumers to Bitcoin Depot's website or to its ATM locations; and (c) Bitcoin Depot's refusal to cease-and-desist from the use of the

Infringing BYTE FEDERAL Mark and other acts of infringement, as demonstrated by (at a minimum) its disregard of the Plaintiff's previous cease-and-desist demands.

74.    The acts of Bitcoin Depot, Huddled Masses, and CC complained of herein are in total disregard of Plaintiff's rights and were commenced, and it is believed will continue, in spite of Bitcoin Depot's, Huddled Masses', and CC's knowledge that their use of the Infringing BYTE FEDERAL Mark was in direct contravention of Plaintiff's rights.

75.    Bitcoin Depot, Huddled Masses, and CC have enjoyed and continue to enjoy financial gain and profit from the marketing and sales/fees of the goods and services that utilize the Infringing BYTE FEDERAL Mark.

76.    Indeed, for their part in the civil conspiracy, and drawing from their expertise in marketing integrations, conversation rate optimization, and search engine optimization and implementation, Huddled Masses and CC executed the unlawful advertising campaign, and generated substantial revenues from Bitcoin Depot in connection with the unlawful campaign.

77.    For its part in the civil conspiracy, Bitcoin Depot reaped increased consumer traffic to its website, increased consumer awareness of its products and services, increased Bitcoin ATM transaction fees, and other increases in revenue stemming from the unlawful campaign.

78.    The Defendants' use of the Infringing BYTE FEDERAL Mark is without

the consent, license, or permission of Plaintiff.

79.    Plaintiff has been damaged by the acts of infringement and unfair competition.

80.    The acts of each Defendant have harmed or will harm Plaintiff's reputation, have damaged or will damage Plaintiff's goodwill, and have created (and will continue to create) the impression that Plaintiff is an infringer, when in fact the Defendants are the infringers.

81.    Actual confusion and a false association is likely to occur, and the unlawful acts alleged herein have caused and will continue to cause substantial and irreparable injury to Plaintiff unless such acts are restrained by this Court.

82.    Plaintiff has no adequate remedy at law.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT
## [15 U.S.C. §§ 1114 and 1125 Against All Defendants]

83.    Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 82 as if fully set forth herein.

84.    With full knowledge and awareness of Plaintiff's ownership and prior use of the Plaintiff's Mark, Bitcoin Depot, Huddled Masses, and CC have willfully used and continue to use the Infringing BYTE FEDERAL Mark in commerce, on or in connection with goods and services in a manner that is likely to cause confusion, reverse confusion, or to cause mistake, or to deceive.

85.     The acts of Bitcoin Depot, Huddled Masses, and CC constitute infringement and use of a confusingly similar mark which is identical with or substantially indistinguishable from the Plaintiff's Mark, in violation of and pursuant to 15 U.S.C. §§ 1114 and 1125.

86.     The acts of Bitcoin Depot, Huddled Masses, and CC constitute trademark counterfeiting and use of a mark which is identical with, or substantially indistinguishable from, a registered mark.

87.     The acts of Bitcoin Depot, Huddled Masses, and CC have harmed or will harm Plaintiff's reputation, have damaged or will damage Plaintiff's goodwill, and upon information and belief, will create the impression that Plaintiff is an infringer when in fact Bitcoin Depot, Huddled Masses, and CC are the infringers.

88.     The aforesaid acts of Bitcoin Depot, Huddled Masses, and CC have caused and will cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

89.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

**COUNT II**
**FEDERAL FALSE DESIGNATION OF ORIGIN**
**AND UNFAIR COMPETITION**
**[15 U.S.C. §1125(a) Against All Defendants]**

90.     Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 82 as if fully set forth herein.

91.     The intentional and unlawful use in commerce of the Infringing BYTE FEDERAL Mark by Bitcoin Depot, Huddled Masses, and CC constitutes use in commerce of a word, term, name, symbol, or device, or a combination thereof, or a false designation of origin, false or misleading description, and false or misleading representation that is likely to cause confusion, reverse confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Bitcoin Depot with Plaintiff, or as to origin, sponsorship or approval of Bitcoin Depot's goods, services, or commercial activities by Plaintiff, or to cause reverse confusion thereof.

92.     The aforesaid acts and use of the Infringing BYTE FEDERAL Mark by Bitcoin Depot, Huddled Masses, and CC constitute palming off, passing off, unfair competition and false designation, and/or false description of origin in violation of §43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

93.     The acts of Bitcoin Depot, Huddled Masses, and CC have harmed or will harm Plaintiff's reputation, have damaged or will damage Plaintiff's goodwill, and upon information and belief, will create the impression that Plaintiff is an infringer when in fact Bitcoin Depot, Huddled Masses, and CC are the infringers.

26

94.     The aforesaid acts of Bitcoin Depot, Huddled Masses, and CC have caused and will cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

95.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

### COUNT III
### FEDERAL FALSE ADVERTISING
### [15 U.S.C. §1125(a)(1)(B) Against all Defendants]

96.     Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 82, as if fully set forth herein.

97.     The unlawful conduct alleged by the Plaintiff ultimately culminated in the false advertisements depicted herein.

98.     Defendants Huddled Masses and CC engaged in, contributed to, and/or induced the false advertising alleged herein.  Upon information and belief, Defendants Huddled Masses and CC were also paid in connection with their contribution and inducement relative to the false advertising alleged herein.

99.     Those false advertisements by Bitcoin Depot (which Huddled Masses and CC engaged in, contributed to, and/or induced) were both false and misleading.

100.    The subject false advertisements were literally false because they

27

suggested to consumers that they originated from Plaintiff (when they did not); that there is a connection between Plaintiff and Bitcoin Depot (when there is not), that Bitcoin Depot has acquired the Plaintiff (when it has not), and/or that Bitcoin Depot has obtained the rights to use the Plaintiff's Mark as a result of a license (when it has not).

101.   The subject false advertisements were also misleading because they deployed deceptive language that lured and otherwise misled consumers, such that when a consumer searched for the Plaintiff, the infringing advertisements displayed "front and center" and in plain text (*i.e.*, not solely in embedded metadata), and the consumer was instead misdirected to Bitcoin Depot's website (which markets, advertises, offers for sale, and sells directly competing goods and services) or to its competing ATM machines.

102.   Those false advertisements deceived, or had the capacity to deceive consumers.  In addition to actual confusion, discovery has revealed that consumers were in fact deceived as a result of those consumers clicking on the false advertisement and being redirected to Bitcoin Depot's webpage.

103.   The deception had a material effect on purchasing decisions, as consumers were likely to stay on Bitcoin Depot's website or to search for the nearest Bitcoin Depot ATM location (if, for example, they are performing the search on a smartphone).  Those consumers were likely to proceed in transacting business with

Bitcoin Depot, and abandoning their search for the Plaintiff's products and services.

104.   The false advertising alleged herein affected (and affects) interstate commerce.  For example, Bitcoin Depot claims that it has "nearly 7,000 Bitcoin ATM machines across the United States and Canada."  Thus, the false advertising alleged herein materially affected consumers across the United States, including their purchasing decisions relative to Bitcoin ATM transactions.

105.   Plaintiff has been or is likely to be injured as a result of the false advertising alleged herein, including damage to the Plaintiff's business, reputation, and goodwill.

106.   Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

## COUNT IV
## TRADEMARK INFRINGEMENT UNDER FLORIDA COMMON LAW
## [Against All Defendants]

107.   Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 82, as if fully set forth herein.

108.   Plaintiff owns and enjoys common law trademark rights in the Plaintiff's Mark in Florida in conjunction with use on goods and services, which rights are superior to any rights that Bitcoin Depot, Huddled Masses, and CC may claim in and to said trademark.

109.   Bitcoin Depot, Huddled Masses, and CC have used, in connection with the sale of goods and services, a term or name that is false and misleading and likely to cause confusion or cause mistake or deception as to the affiliation, connection or association of Bitcoin Depot with Plaintiff as to the origin, sponsorship or approval of goods, services, or commercial activities in violation of common law.

110.   The sale of Huddled Masses' and CC's advertising and marketing services bearing the Infringing BYTE FEDERAL Mark, and the sale of Bitcoin Depot's goods and services bearing the Infringing BYTE FEDERAL Mark in the State of Florida is likely to cause confusion as to the source of the goods and services in that purchasers thereof will be likely to associate or have associated such goods and services as originating with Plaintiff, all to the detriment of the Plaintiff.

111.   The acts of Bitcoin Depot, Huddled Masses, and CC have harmed or will harm Plaintiff's reputation, have damaged or will damage Plaintiff and its goodwill, and have created or will create the impression that Plaintiff is an infringer when in fact Bitcoin Depot, Huddled Masses, and CC are the infringers.

112.   The aforesaid acts of Bitcoin Depot, Huddled Masses, and CC have caused and will continue to cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

113.   The aforesaid acts of Bitcoin Depot, Huddled Masses, and CC constitute

infringement, unfair competition, misappropriation, and misuse of the Plaintiff's

Mark, all in violation of Plaintiff's rights at common law and under the law of the State

of Florida.

114.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays that the Court grant the Prayer for Relief set

forth below.

## COUNT V
## UNFAIR COMPETITION UNDER FLORIDA COMMON LAW
### [Against All Defendants]

115.    Plaintiff incorporates herein each and every allegation set forth in

Paragraphs 1 through 82, as if fully set forth herein.

116.    The Plaintiff first adopted and used Plaintiff's Mark in Plaintiff's markets

or trade areas, as a means of establishing good will and reputation and to identify

particular goods and services rendered or offered by the Plaintiff and to distinguish

them from similar goods and services rendered or offered by others.

117.    Through its association with such goods and services, the Plaintiff's Mark

has, by actual usage, served to identify the Plaintiff as the source of the goods and

services.

118.    Bitcoin Depot, Huddled Masses, and CC commenced the use of an

identical or confusingly similar trademark, to identify goods and services rendered by

Bitcoin Depot in the same trade areas in which the Plaintiff has already established its

trademark.

119.    As a consequence of Bitcoin Depot's, Huddled Masses', and CC's actions, customer confusion of source or as to the sponsorship of the goods and services offered by Bitcoin Depot is likely.

120.    The aforesaid acts of Bitcoin Depot, Huddled Masses, and CC constitute unfair competition, misappropriation, misuse, palming off, and/or passing off of the Plaintiff's Mark, all in violation of Plaintiff's rights at common law and under the law of the State of Florida.

121.    The acts of Bitcoin Depot, Huddled Masses, and CC have harmed or will harm Plaintiff's reputation, and have damaged or will damage Plaintiff and its goodwill.

122.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

## COUNT VI
## CIVIL CONSPIRACY
## [Against All Defendants]

123.    Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 82, as if fully set forth herein.

124.    This is an action for civil conspiracy against the named Defendants, where the underlying wrong is the unlawful action of trademark infringement.

125.    Beginning as early as April of 2019, and running at least through January 2023, Defendants Huddled Masses and CC each conspired with Bitcoin Depot and agreed, expressly and/or tacitly, to achieve the unlawful campaign to target Plaintiff and infringe the Plaintiff's Mark. This constituted the initial formation and beginning operations of the conspiracy, followed by the wrongful conduct in furtherance of the conspiracy alleged herein, and also set forth immediately below.

126.    As part of and in furtherance of this conspiratorial scheme, and seizing upon their industry experience in advertising and marketing designed to increase customer revenue, Huddled Masses and CC both committed numerous over acts in connection with developing online competitor campaigns (which included the Plaintiff as one of Bitcoin Depot's competitors).

127.    Upon information and belief, Huddled Masses and CC both engaged in numerous overt acts, including the unlawful use and targeting of Plaintiff's "BYTEFEDERAL" mark in the infringing advertisements that are the subject of this Amended Complaint, which intentionally included Plaintiff's Mark in the ad text, including in a prominent way in the title of the ad.

128.    These paid advertisements and/or sponsored links included the Plaintiff's trademark, as well as deceptive language that lured and otherwise misled consumers, such that when a consumer searched for the Plaintiff, the infringing advertisements displayed "front and center" and in plain text (*i.e.*, not solely in

embedded metadata), and the consumer was instead misdirected to Bitcoin Depot's website (which markets, advertises, offers for sale, and sells directly competing goods and services) or to its competing ATM machines.

129.   As part of and in furtherance of this conspiratorial scheme, Huddled Masses and CC were both paid by Bitcoin Depot for purposes of executing this unlawful campaign.

130.   As part of and in furtherance of this conspiratorial scheme, Bitcoin Depot committed the overt act of providing Huddled Masses and CC with Bitcoin Depot's "competitor list," so that Huddled Masses and CC could execute this unlawful campaign.

131.   As shown from the image immediately below, Bitcoin Depot has provided a sworn interrogatory response which substantiates the allegations in the paragraphs immediately above:

> 5.    With respect to the "sponsored advertisement" shown immediately above, identify all individuals involved in the conception, selection, and/or adoption, and the date of such conception/selection/adoption. For each such individual, please state his/her title and the role he/she played in connection with such conception/selection/adoption.
>
> **ANSWER: Defendant objects to Interrogatory No. 5 on the grounds of compound question. The following individuals/companies were involved in the actions that allowed the above-referenced Google advertisement to populate.**
>
> - **AIS Media** – Outside advertising consultant.
> - **Huddled Masses** – Outside advertising consultant.
> - **Cardamome Marketing Group/ Nick Cardamome** – Outside advertising consultant.
>
> **The above consultants provided all keywords for both advertising campaigns that lead to the population of the above-referenced Google advertisement. The above consultants received the competitor list from the defendant.**

132.    As part of and in furtherance of this conspiratorial scheme, Bitcoin Depot committed the overt act of paying monies to Huddled Masses and CC for purposes of executing this unlawful campaign.

133.    Defendants Bitcoin Depot, Huddled Masses, and CC acted with full knowledge of this civil conspiracy.

134.    Defendants Bitcoin Depot, Huddled Masses, and CC all profited and benefited from the agreed-upon conspiratorial scheme.  Huddled Masses and CC received monies from their client (*i.e.*, Bitcoin Depot), as well as an ongoing client relationship with Bitcoin Depot's overall advertising and marketing needs and strategies.

135.    Defendant Bitcoin Depot profited and benefited from the agreed-upon conspiratorial scheme, as it received an increased consumer following stemming from "hits" on the infringing advertisements, increased revenues, increased marketplace presence, and an unfair/unlawful competitive advantage due to the deceitful advertising campaign.

136.    By engaging in the aforesaid acts, the conspiring Defendants in this cause of action engaged in willful trademark infringement, and engaged in the foregoing unlawful acts using improper means or methods, and/or lawful acts by unlawful means.

137.    Plaintiff has been damaged as a result of the named Defendants' acts done under the conspiracy, as well as their underlying trademark infringement and unfair competition.

WHEREFORE, Plaintiff requests that the Court grant the relief requested in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays:

A.    That this Court will adjudge that the Plaintiff's Mark has been infringed, as a direct and proximate result of the willful acts of Bitcoin Depot, Huddled Masses, and CC as set forth in this Amended Complaint, including Bitcoin Depot's, Huddled Masses', and CC's use of the Infringing BYTE FEDERAL Mark, in violation of

Plaintiff's rights under the Lanham Act, 15 U.S.C. §1051 et seq., Fla. Stat. §495.161, and the common law of the State of Florida.

B.     That this Court will adjudge that Bitcoin Depot, Huddled Masses, and CC have competed unfairly with Plaintiff in violation of Plaintiff's rights at common law and in violation of Plaintiff's rights under the Lanham Act, 15 U.S.C. §1125(a).

C.     That Bitcoin Depot, Huddled Masses, and CC, and all officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation therewith, be permanently enjoined and restrained:

1)   From using or licensing the Plaintiff's Mark, the Infringing BYTE FEDERAL Mark, or any reproduction, infringement, copy or colorable imitation and any formative variations or phonetic equivalents thereof, or any term, name or mark which incorporates any of the foregoing, or any trademark similar thereto or likely to be confused therewith, in connection with the distribution, marketing, advertising or sale of any unauthorized goods and services;

2)   From using, applying to register, or registering any logo, trade name, or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the unauthorized goods and services of the Bitcoin Depot, or of any third parties, are sponsored by, authorized by, or in any way associated with Plaintiff and/or that the goods and services of Plaintiff are inferior to, copies of, infringing of or imitations of the goods and services of Bitcoin Depot;

3)   From using, licensing, advertising, marketing, displaying as a keyword or metatag (including but not limited to the ad text in GOOGLE advertising), maintaining, registering, or renewing any confusingly similar domain names (including but not limited to any which incorporate, either in whole or in part, any of the Plaintiff's Mark), or any reproduction, infringement, copy or colorable imitation and any formative variations or phonetic equivalents thereof, or any term, name or mark which incorporates any of the foregoing, or any trademark

37

similar thereto or likely to be confused therewith, in connection with the distribution, marketing, advertising or sale of any unauthorized goods and services;

4) From infringing the Plaintiff's Mark;

5) From doing any other act or thing likely to cause the public or the trade to believe that there is any connection between Bitcoin Depot, Huddled Masses, CC and Plaintiff, or their respective goods and services or commercial activities;

6) From falsely representing Bitcoin Depot as being connected with Plaintiff, or sponsored by or associated with Plaintiff, or engaging in any act which is likely to falsely cause the trade and/or members of the purchasing public to believe that Bitcoin Depot or its affiliates are associated with Plaintiff and/or that Plaintiff is associated with Bitcoin Depot; and

7) From affixing, applying, annexing, or using in connection with the sale of any goods or services marketed, advertised, promoted, offered for sale, or sold by Bitcoin Depot, Huddled Masses, and CC, a false description or representation including words or other symbols tending to falsely describe or represent such goods or services.

D.      That Bitcoin Depot, Huddled Masses, and CC be required to recall and deliver up for destruction all goods, labels, signs, prints, packages, inventory, advertisements, internet advertising and other written or printed material in their possession or control which bear the Plaintiff's Mark or any infringement thereof, including but not limited to the Infringing BYTE FEDERAL Mark, and any formative variations or phonetic equivalents thereof, or any term, name or mark which incorporates any of the foregoing, or any trademark similar thereto or likely to be confused therewith, alone or in combination with any other word or element.

38

E.     That Bitcoin Depot, Huddled Masses, and CC be directed to file with this Court and to serve upon Plaintiff within thirty days after service of the injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with the paragraphs above, including all subparts.

F.     That Plaintiff have and recover Bitcoin Depot's, Huddled Masses', and CC's profits and the damages of Plaintiff arising from Bitcoin Depot's, Huddled Masses', and CC's acts of trademark infringement, unfair competition, false advertising, and civil conspiracy, and that the Court, pursuant to §35 of the Lanham Act, enter judgment, and that said sum be trebled as authorized pursuant to 15 U.S.C. §1117(a).

G.     That Plaintiff have and recover such sums as are necessary to place or compensate for corrective advertising.

H.     That Plaintiff have and recover nominal damages.

I.     That Plaintiff have and recover punitive damages, pursuant to the laws of the State of Florida, and common law, in addition to actual damages and/or nominal damages.

J.     That Plaintiff have and recover both pre-judgment and post-judgment interest on each and every damage award.

K.     That Plaintiff be entitled to injunctive relief as set forth in §34 of the Lanham Act, 15 U.S.C. § 1116;

L.      That Plaintiff have and recover the remedies set forth in §35 of the Lanham Act, 15 U.S.C. §§1117.

M.      That Plaintiff have and recover the remedies set forth in §36 of the Lanham Act, 15 U.S.C. §§1118.

N.      That the Court award an accounting of Bitcoin Depot's, Huddled Masses', and CC's profits from the sale and/or fees generated in connection with the goods and services sold, used, transacted, or purchased under or in connection with the Infringing BYTE FEDERAL Mark through trial or final adjudication.

O.      That Plaintiff have and recover its reasonable attorney's fees incurred in this action, pursuant to §35 of the Lanham Act, 15 U.S.C. §1117, and as otherwise authorized.

P.      That Plaintiff have and recover its taxable costs and disbursements herein, pursuant to §35 of the Lanham Act, 15 U.S.C. §1117, and as otherwise authorized.

Q.      That Plaintiff have and recover such further relief as the Court may deem just and proper.

### **DEMAND FOR A JURY TRIAL**

Plaintiff demands a trial by jury as to all issues triable of right by a jury.

Dated: August 1, 2023                          Respectfully submitted,

                                               /s/Jonathan Woodard
                                               John Cyril Malloy, III
                                               Florida Bar No. 964,220

jcmalloy@malloylaw.com
Oliver Alan Ruiz, Lead Counsel
Florida Bar No. 524786
oruiz@malloylaw.com
Jonathan Woodard
Florida Bar No. 096,553
jwoodard@malloylaw.com
**MALLOY & MALLOY, P.L.**
2800 S.W. Third Avenue
Miami, Florida 33129
Telephone (305) 858-8000
*Attorneys for Plaintiff*

### Certificate of Service

I hereby certify that on August 1, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which serves the foregoing document on all counsel of record in this case, including counsel for Defendant Lux Vending, LLC d/b/a Bitcoin Depot (wgiltinan@carltonfields.com, ehoyle@carltonfields.com, aschwartz@carltonfields.com, and tstanton@stantoniplaw.com).

/s/Jonathan Woodard