UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BYTE FEDERAL, INC.,

    Plaintiff,

v.                                    Case No. 8:23-cv-102-MSS-SPF

LUX VENDING LLC d/b/a BITCOIN
DEPOT; THE CARDAMONE
CONSULTING GROUP, LLC; and
HUDDLED MASSES, INC.,

    Defendants.
_____/

**ORDER**

    Before the Court is Plaintiff's Motion to Compel Lux Vending, LLC d/b/a Bitcoin Depot ("Bitcoin Depot") to Immediately Produce Documents and Other Information Responsive to Plaintiff's Discovery Requests (Doc. 124). Bitcoin Depot filed a response in opposition to Plaintiff's Motion (Docs. 127). Upon consideration, the Court finds that the Motion should be DENIED.[1]

    Plaintiff Byte Federal, Inc. initiated this action in January 2023, alleging that Defendant Bitcoin Depot willfully infringed upon Plaintiff's federally registered "ByteFederal" trademark through a years-long intentional advertising campaign (Doc. 1). Plaintiff alleges that Bitcoin Depot conducted an advertising campaign which caused Bitcoin Depot's advertisements to appear at the top of Google search results when consumers searched for Plaintiff. Plaintiff alleges that these advertisements were deceptive because

---

[1] Two of the discovery requests at issue in Plaintiff's motion were resolved before Bitcoin Depot filed its response (*See* Doc. 127 at 5 n.3).

Bitcoin Depot caused Plaintiff's trademark to appear in the headline of the sponsored advertisement, which then lured and misdirected Plaintiff's customers to Bitcoin Depot's website. An example of one such disputed advertisement appears below.



(Doc. 124 at 3).

During Plaintiff's investigation of this case, it discovered that Bitcoin Depot also used another competitor's trademark, Coin Cloud, in a similar advertisement (Doc. 124 at 15). As a result, Plaintiff served Bitcoin Depot with Request for Production No. 18, which seeks "[a]s it relates to any of Your advertisements featuring or otherwise displaying any iteration of Your Competitors' and/or their trademarks . . . documents sufficient to show: (a) the number of 'impressions' that the subject advertisement appeared and/or was displayed; [and] (b) the total number of 'clicks' for those advertisements." (*Id.*). Relatedly, Plaintiff also served

Bitcoin Depot with Interrogatory No. 13, which asked Bitcoin Depot to "specify the total number of 'impressions' and 'clicks' for any Bitcoin Depot advertisement where the name of any Bitcoin Depot competitor . . . appeared in the visible text of the Bitcoin Depot advertisement." (*Id.* at 16). Bitcoin Depot reported that it had no documents responsive to Request for Production No. 18, and objected to Interrogatory No. 13 as follows:

> Bitcoin Depot objects to this Interrogatory as overly broad, unduly burdensome and oppressive, not relevant to the claims and defenses in this case, and as not proportional to the needs of the case because Plaintiff defined the term "Bitcoin Depot" to include nonparties and entities other than Defendant Bitcoin Depot.
>
> Bitcoin Depot further objects to this interrogatory as duplicative, overly broad, unduly burdensome, and oppressive as it has already produced sworn testimony that "impressions" and "clicks" are a direct result of the Google algorithm used to insert keywords in a headline with dynamic keyword insertion and cannot be reported by any party, other than Google, with any accuracy. The total number of "impressions" and "clicks" for any advertisement where the name of any Bitcoin Depot competitor appeared in the visible text of the advertisement, if any, is unknown.

(Doc. 124-2 at 5, 14).

While Plaintiff disagrees with Bitcoin Depot's assertion, it argues that the Court should at least compel Bitcoin Depot to produce the same information that Bitcoin Depot produced to Plaintiff that contained the number of "impressions" and "clicks" of ads where Plaintiff's name was displayed in the ad text. Bitcoin Depot disputes Plaintiff's characterization of these reports, explaining that they only show how many times Google displayed individual ads based on Bitcoin Depot's bids for "Byte Federal," and how many times those ads were clicked by a user.[2] In other words, the reports do not indicate how many

---

[2] Google Ads contains a feature known as Dynamic Keyword Insertion, which allows advertisers to automatically update their ad headlines with the keywords in their ad group that caused the ad to show. This allows an ad headline to closely match a user's search terms. For example, if an advertiser used the keyword "chocolate," Google Ads could try to replace this with one of the keywords in the advertiser's ad group, like "dark chocolate" or "gourmet

3

of those ads actually contained the name "Byte Federal" in the text. Thus, these reports contain what Bitcoin Depot characterizes as the "upper limit" of the number of impressions or clicks of ads potentially displaying Plaintiff's trademark.

As a result, Bitcoin Depot argues that Plaintiff's motion should be denied because it does not have the information Plaintiff seeks in its possession, custody, or control. Bitcoin Depot further argues that Plaintiff did not request information or reports estimating the upper limit of impressions or clicks on advertisements potentially displaying competitors' names, and Plaintiff is improperly using a motion to compel to amend its discovery requests. Bitcoin Depot further notes that Plaintiff is already in possession of documents produced by Google that show all of its keywords with total ad impressions and clicks generated. Finally, Bitcoin Depot argues that information on the extent to which Bitcoin Depot used other competitors' names as keywords in ads is neither relevant nor proportional to the case, which is limited to whether Bitcoin Depot infringed Plaintiff's trademark. For the reasons explained below, the Court agrees.

## ANALYSIS

Motions to compel discovery are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). Discovery under the Federal Rules is governed by the principle of proportionality. Federal Rule of Civil Procedure 26(b)(1) defines the scope of discoverability as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount

---

chocolate," depending on what the user searched. *See generally* About Keyword Insertion for Your Ad Text, Google, https://support.google.com/google-ads/answer/2454041?hl=en&ref_topic=10546565&sjid=5777230934387296825-NA (last visited December 2, 2024).

> in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant.  *Moore v. Lender Processing Servs. Inc.*, No. 3:12-CV-205-J, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013).  "A party resisting discovery must establish 'lack of relevancy or undue burden in supplying the requested information.'"  *Craig v. Kropp*, No. 2:17-cv-180-FtM-99CM, 2018 WL 1121924, at *3 (M.D. Fla. Mar. 1, 2018) (quoting *Gober v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000)).

Plaintiff first challenges Bitcoin Depot's assertion that the total number of "impressions" and clicks" for any advertisement where the name of any Bitcoin Depot competitor appeared in the visible text of the advertisement is unknown.  While Plaintiff may question the veracity of this statement, Plaintiff has not cited any evidence to contradict it.  And, the Court cannot compel Bitcoin Depot to produce documents that do not exist.  *See Tibbetts Lumber Co., LLC v. Amerisure Mut. Ins. Co.*, No. 8:19-cv-1275-KKM-AAS, 2021 WL 1966492, at *2 (M.D. Fla. May 17, 2021) ("[T]he Court cannot compel [a party] to provide information or documents that do not exist.") (quoting *Thermoset Corp. v. Building Materials Corp. of Am.*, No. 4-60268-CIV, 2014 WL 6473232, at *4-5 (S.D. Fla. Nov. 18, 2014)); *Velez v. Evy L&L Servs., LLC*, No. 8:18-cv-1696-T-60SPF, 2019 WL 7286601, at *3 (M.D. Fla. Dec. 13, 2019) ("The Court notes that, notwithstanding the fact that Intuitive is required to produce information and documents within its possession, custody, or control, to the extent that no documents exist, this Court cannot compel the impossible.") (citations omitted).

Plaintiff thus attempts to skirt Bitcoin Depot's assertion, arguing that it should at least be compelled to produce a spreadsheet showing the "upper limit" of impressions and clicks

on advertisements displayed based on Bitcoin Depot's bids for competitors' names.  First, the Court notes that Rule 34 does not require a party to prepare documents or reports that do not already exist.  *See Nazer v. Five Bucks Drinkery LLC*, No. 8:16-cv-2259-T-36JSS, 2018 WL 1583640, at *2 (M.D. Fla. Apr. 2, 2018) ("Rule 34 limits a request for production of documents which are in the opposing party's possession, custody, or control and does not require a party to create new documents for production.") (quotations and citations omitted); *Kaplan v. Kaplan*, No. 2:10-cv-237-CEH-SPC, 2010 WL 11474437, at *1 (M.D. Fla. Oct. 8, 2010) ("[T]he Plaintiff is actually compelling the Defendant to create a document, essentially a list, of names and addresses. A party, however, is not required to create new documents for their production.").

The Court also agrees with Bitcoin Depot that Plaintiff is attempting to rewrite its requests through this motion to compel.  Request for Production No. 18 and Interrogatory No. 13 both seek the total number of clicks and impressions resulting from any Bitcoin Depot advertisement where the name of a competitor appeared in the visible text of the advertisement.  This is different from a request for the total number of clicks and impressions that resulted from Bitcoin Depot's keyword bids on a competitor name, or from a request for the upper limit of clicks and impressions resulting from an advertisement where the name of a competitor *may have* appeared in the visible text.  *See Pro Video Instruments, LLC v. Thor Fiber, Inc.*, No. 6:18-cv-Orl-31LRH, 2019 WL 5294945, at *2 (M.D. Fla. Sept. 13, 2019) (denying motion to compel because the requests for production "were specifically limited to Defendant's sales information as it relates to the allegedly infringing products at issue, they do not seek Defendant's gross sales as a whole, and the Court declines to rewrite these requests as broadly as Plaintiff now interprets them").

While the Court is mindful that "[d]iscovery in this district should be practiced with a spirit of cooperation and civility," *Middle District Discovery* (2021) at I(A)(1), Plaintiff has known about the limitations on the data from Bitcoin Depot's Google Ads account since at least March 2024 and could have drafted new discovery requests that targeted information Bitcoin Depot was capable of providing (*See* Doc. 124-3). And while Bitcoin Depot clearly agreed to generate and produce reports related to Plaintiff's trademark, it was under no obligation to do the same for other competitors, particularly considering its objection to the relevance of that information.

Even if the Court were to assume that Interrogatory No. 13 requested the total number of clicks and impressions that resulted from Bitcoin Depot's bids on a competitor name—information Bitcoin Depot is capable of providing—the Court finds that Bitcoin Depot's relevance and proportionality objections are well-taken. Plaintiff argues that its requests seek relevant information because the "intent of the alleged infringer" is one of the likelihood of confusion factors and Plaintiff alleges that Bitcoin Depot's intent to infringe Plaintiff's mark was willful. *See SCAD v. Sportswear, Inc.*, 983 F.3d 1273, 1281 (11th Cir. 2020). While the fact that Bitcoin Depot also used other competitors' trademarks in its Google ad campaign could be tangentially relevant to the issue of willfulness, the Court fails to see how the amount of clicks and impressions that resulted from Bitcoin Depot's bids on competitor names is relevant. Considering its dubious relevance, the Court agrees that this information is not proportional to the needs of the case. This is particularly true considering Bitcoin Depot's representation that Plaintiff already has documents produced by Google that show all of Bitcoin Depot's keywords with the total ad displays and clicks generated.

7

**Attorney's Fees**

Each party also requests costs and attorney's fees associated with bringing and defending this motion. Rule 37(a)(5)(B) provides that if a motion to compel is denied, "the court must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). Similarly, Rule 37(a)(5)(A) provides that, if disclosure of the requested discovery is provided after a motion to compel was filed, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). The Court must not order payment of attorney's fees if the motion was filed prior to attempting in good faith to obtain the discovery without court intervention, the motion or opposition was substantially justified, or other circumstances make an award of expenses unjust. *Id.* "Substantially justified means that reasonable people could differ as to the appropriateness of the contested action." *Hill v. Emory Univ.*, 346 F. App'x 390, 392 (11th Cir. 2009) (per curiam) (quoting *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997)) (internal quotation marks omitted).

Here, the Court finds that an award of expenses is inappropriate. By its motion, Plaintiff sought to compel Bitcoin Depot to provide documents in response to two requests for production and provide responses to two interrogatories. After Plaintiff filed its motion, Bitcoin Depot provided documents responsive to one request for production and provided a response to one interrogatory. The Court denied the relief Plaintiff sought through the other request for production and interrogatory. Thus, each party prevailed on one half of the relief

sought. And while, in such situations, Rule 37(a)(5)(C) permits courts to apportion the reasonable expenses for the motion, the Rule grants the Court discretion in making this decision. *See Bumgarner v. Sanofi US Servs., Inc.*, No. 8:23-cv-1178-MSS-SPF, 2024 WL 3826251, at *2 (M.D. Fla. Aug. 15, 2024) ("Rule 37(a)(5)(C) grants this Court discretion in deciding whether to award reasonable expenses, including attorney's fees.") (citations omitted). The Court declines to award fees or costs.

Accordingly, it is hereby **ORDERED**:

(1) Plaintiff's Motion to Compel Lux Vending, LLC d/b/a Bitcoin Depot to Immediately Produce Documents and Other Information Responsive to Plaintiff's Discovery Requests (Doc. 124) is **DENIED**;

(2) Defendant Lux Vending, LLC d/b/a Bitcoin Depot's request for attorney's fees incurred in defending Plaintiff's Motion to Compel is **DENIED**.

**ORDERED** in Tampa, Florida on December 2, 2024.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE